# IN THE TAX COURT OF THE STATE OF OREGON

Clyde V. BRUMMELL,
the E. Margaret Brummell Trust and
the Clyde V. Brummell Trust

*v.*

## DEPARTMENT OF REVENUE

(TC 3931)

Michael Kavanaugh, Portland, represented Plaintiffs (taxpayers).

Joseph P. Dunne, Assistant Attorney General, Department of Justice, Salem, represented Defendant (department).

Decision for Defendant rendered April 17, 1998.

**CARL N. BYERS, Judge.**

Plaintiffs' Complaint challenges Multnomah County's assessment practices regarding residential rental properties for the 1993-94 and 1994-95 tax years. Specifically, Plaintiffs claim that using the sales comparison approach to assess rental properties of less than five units, and the income capitalization approach to assess rental properties of five or more units, violates both the Oregon Constitution and the United States Constitution.

## FACTS

Plaintiffs own approximately 105 units of residential real estate, all held for rent or lease. Most of the units are single-family residences with some duplexes, triplexes, four-plexes, and one five-plex. The majority of the units are located in southeast Portland with most of them concentrated in the Sellwood area. Plaintiffs operate the properties as a business, utilizing a full-time property manager and a significant staff of skilled employees to maintain and repair the properties. Plaintiff Clyde Brummell (Clyde) views the properties as investments on which he seeks a 12 percent annual return.

At trial, undisputed testimony established that Multnomah County uses the sales comparison approach to value residential rental properties of one to four units. For properties which contain 5 to 20 residential units, the assessor's office uses a gross-rent multiplier, which the assessor views as a modified sales comparison approach. For properties which contain from 20 to 40 units, the assessor's office uses a gross-rent multiplier and an income capitalization approach. For properties which have 40 or more units, the assessor uses the income capitalization approach.

The main witness from the assessor's office testified that the use of any particular method is determined by the availability and reliability of market data. He indicated that Portland is a large metropolitan area "rich" in sales data. Income data is harder to obtain. Also, the witness believes the income capitalization approach is less reliable, with greater risk of error due to omitted or overstated income or expenses.

Plaintiffs assert that the different valuation methods result in unequal tax burdens. They allege that their rental properties are assessed in excess of real market value and that properties assessed by an income approach are given a privilege denied to them. Plaintiffs seek a declaration that all residential real property must be assessed on a uniform basis, regardless of the number of residential units. They contend there is no significant difference between their 105 units, which may be scattered over several neighborhoods, and a 105-unit apartment building. Plaintiffs allege that the assessor's practice of using different assessment methods is "arbitrary, capricious, unreasonable, improper, not supported by any accepted rationale, and in violation of the state and federal constitutions and state law[.]"

## ISSUES

Plaintiffs' appeal presents three issues:

1.    Does the use of different methods of valuation violate the uniformity requirements of Article I, section 32, of the Oregon Constitution?

2.    Does the classification of properties, distinguishing single-family residential properties from multiple-family unit properties, grant a privilege to some citizens in violation of Article I, section 20, of the Oregon Constitution?

3.    Does the assessor's practice of using different methods of valuation to assess differently classified property violate Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution?

## ANALYSIS

*Background*

■■    Because Plaintiffs' Complaint raises constitutional issues, it is appropriate to review some fundamental characteristics of Oregon's property tax system. Property taxes are imposed ad valorem; that is, taxes are apportioned based upon the value of property. This requires the assessor to physically appraise every parcel of taxable real property. Limited resources usually prevents this from being done

every year. The statutes require that property be physically reappraised at least once every six years. ORS 308.234.

■     It is important to distinguish "appraising" property from "assessing" property. Appraising property is a systematic approach or method of estimating property value. Assessing property is the act of assigning a value to property on the tax roll for purposes of apportioning the taxes. Although property must be appraised only once every six years, it must be assessed every year.

■     ORS 308.232 provides that property is to be appraised and assessed at 100 percent of its real market value. Because property is only appraised once every six years, some method must be used to adjust the assessed value for the tax years between appraisals to comply with the constitutional requirement of uniformity. Accordingly, ORS 309.200 requires the assessor to prepare a ratio study. The ratio study, which compares assessed values to real market values, is the primary means used to adjust assessed values to maintain uniformity. The Department of Revenue has also established classifications of property as an additional tool to help maintain uniformity. *See* OAR 150-308.215(1)-(A).

■     Real market value is a distinct concept, separate from other measures of value such as investment value, insurance value, or replacement value. It is typically measured by three approaches: the sales comparison approach, the reproduction or replacement cost approach, and the income approach. Where adequate comparable sales exist, the sales comparison method is preferred by statute. *Portland Canning Co. v. Tax Com.*, 241 Or 109, 113, 404 P2d 236 (1965). In the absence of a rule prescribing the use of a particular method, which approach or combination of approaches best measures market value is a question of fact to be determined in each case. *United Telephone Co. v. Dept. of Rev.*, 307 Or 428, 431-32, 770 P2d 43 (1989). The Oregon Supreme Court has noted that OAR 150-308.205, the department's rule addressing the concept of real market value, does not prescribe any one approach. *Lewis v. Dept. of Rev.*, 302 Or 289, 293, 728 P2d 1378 (1986).

With this background, the court will address Plaintiffs' claims.

*Uniformity*

■       Article I, section 32, of the Oregon Constitution, states, in part:

"[A]ll taxation should be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

■       The clearly stated requirement of the above provision is that the "tax" be uniform, not the methods of establishing assessed value. The tax which is levied must be uniformly apportioned throughout the taxing district. *East Portland v. Multnomah Co.*, 6 Or 62, 66 (1876). In the context of the property tax, the constitution requires the tax to be imposed at the same rate on the same kinds of property throughout the district. Because value is the measure used to apportion the tax, so long as property is valued or assessed at its market value, the tax will be uniformly apportioned.

■       Plaintiffs believe they have a constitutional right to have the same valuation methods used to appraise all rental residential properties. That cannot be. Value is a function of the marketplace. The many differences in property such as location, nature, and use may inherently require employing different methods of estimating value. The law cannot mandate a rule which operates contrary to economic realities and at the same time require real market value assessments. For example, some owner-occupied, single-family residences, due to their size, style, quality or location, may have no comparable sales. Consequently, the assessor will have to rely upon a cost approach or some other method. Likewise, a single-family residence located in a commercial zone and used as a home and office combination may be more reliably assessed using a rental approach than a sales comparison approach.

■       All that is needed to achieve uniformity of valuation for purposes of the constitution is to use real market value. The courts recognize that appraising is an inexact art and the constitutional requirement is satisfied if assessors achieve "relative uniformity." *Appeal of Kliks*, 158 Or 669, 684, 76 P2d 974 (1938). As a quasi-judicial officer, the assessor has

discretion to determine which method most accurately measures the value of the property.

> "Thus several methods might be used to determine true cash value, but irrespective of the method used, true cash value is one of the basic rules of assessment. * * * [I]f the assessment is reasonably proportionate to assessed valuation of similar properties in the county, the assessment does not violate any constitutional or statutory provisions." *Robinson et ux v. State Tax Com.*, 216 Or 532, 536, 339 P2d 432 (1959).

Ideally, the assessor would use all three standard approaches to estimate value. However, as indicated, appraising is an art as much as science. To achieve uniformity and accuracy, appraisers must use their judgment to determine the most reliable indications of value.

Plaintiffs introduced evidence which they believe supports their position that the income approach undervalues residential properties of five or more units. Plaintiffs' contentions are not entirely consistent because they also argue that:

> "Ex 1 demonstrates that the 'trending' done by Multnomah County results in constant overassessment of properties."

Nevertheless, there are several problems with Plaintiffs' Exhibit 1. First, the exhibit does not clearly show that multiple-unit properties are underassessed. On cross-examination, Plaintiffs' witness admitted that the exhibit compares sales from a later date with assessed values of an earlier time. This tends to exaggerate the difference between sale price and assessed value. No adjustment was made for this difference. Also, Plaintiffs' witness was not knowledgeable with regard to assessed values for the year following the dates of sale.

Even assuming that Exhibit 1 shows multiple-unit properties were underassessed, it does not entitle Plaintiffs to relief. Plaintiffs have not shown that their properties are assessed in excess of real market value. Consequently, to obtain relief, Plaintiffs must show that other properties were arbitrarily or systematically underassessed. *Penn Phillips Lands v. Tax Com.*, 247 Or 380, 385, 430 P2d 349 (1967).

In relation to this point, Defendant submitted evidence indicating that Plaintiffs' properties may be underassessed. The county's ratio studies for District 4, where the subject properties are located, show the following:

## AVERAGE RATIO OF
## ASSESSED VALUE TO MARKET VALUE

| Year | Single-Family Residences | Multi-Family Residences |
|------|--------------------------|-------------------------|
| 1993 | Ratio - 89.443 | Ratio - 98.330 |
| 1994 | Ratio - 91.162 | Ratio - 86.698 |
| 1995 | Ratio - 96.022 | Ratio - 97.834 |

The above study indicates that for two out of the three years, multi-family properties were assessed closer to real market value than were single-family residences.

*Privileges*

Plaintiffs assert that using the income approach to assess multi-family properties gives those property owners privileges denied to Plaintiffs. Plaintiffs claim this violates Article I, section 20, of the Oregon Constitution. They want the income approach used to value their properties in the belief that it will result in less taxable value.

Differences in individual properties and in the market forces affecting the value of properties often require various methods to determine their market value. *See Robinson.*

The evidence submitted at trial established that the Multnomah County Assessor uses whatever market data is deemed most reliable. The preponderance of the evidence did not establish that the subject properties are assessed in excess of their real market value (or that multi-family properties are assessed at less than real market value). To the contrary, Defendant's evidence indicated in general that both single-family residential properties and multi-family residential properties are underassessed in a relatively uniform manner.

Plaintiffs believe their properties are overassessed relative to multi-family residential properties because the assessed value of single-family properties has increased at a faster rate. However, such increases are not necessarily a function of the assessment method. Various factors such as market demand and low mortgage interest rates may increase the prices of single-family properties while low demand for apartments may retard rents and apartment values. If the increases are due to economic causes, then the resulting differences in value must be reflected in their assessed values in order to comply with constitutional requirements of uniformity.

Plaintiffs also assert that classifying multi-family property different from single-family residential property is in error. Plaintiffs assert that such a classification violates the constitution and exceeds the department's authority. Plaintiffs argue that all residential property which is held for rent must be assessed by the same methods.

The classification distinguishing between multi-family and single-family property is not made for purposes of imposing different tax rates, it is for determining methods of valuation and administering the property tax system. However, regardless of the method, both multi-family and single-family residential properties are taxed at the same rate based on the same apportioning standard: real market value. So long as real market value is obtained, the method used is of little interest. As such, Plaintiffs can attack the classification only by showing that it results in one or both classes being overassessed or underassessed. They have not done so.

Plaintiffs assume that using different valuation methods for the same class constitutes discrimination. They also assert that the department exceeded its authority prescribing rules. However, Plaintiffs arguments are answered by their own brief where they quote *Lewis v. Dept. of Rev.*, 302 Or 289, 292, 728 P2d 1378 (1986). There the court stated:

> "Defendant 'may prescribe a method of valuation by rules, ORS 306.120, ORS 308.205, but in the absence of a single prescribed method, the proper meth[o]d is itself a matter to be resolved by evidence, if it is disputed.' "

Plaintiffs' claims of discrimination assume "that all commercial residential property is one class for assessment purposes." Plaintiffs believe that this is true "[w]hether one unit or more than five units, all share the common characteristic of commercial rental units."

Plaintiffs' position is not supported by logic or evidence. Rented residential real estate is not taxed differently from owner-occupied real estate. Plaintiffs believe that owner-occupied homes are in a different class than rentals. If that were true, it would also be true for office buildings and other commercial properties. Obviously, there is no logic to support such a position. Whether a 10-story office building is occupied by a corporate owner or lessee does not make that building a different class.

Plaintiffs also look to the value differences in maintaining that the classification is in error. However, it is common knowledge that owner-occupied single-family homes typically sell for more than similar rented single-family homes. This is not because rental properties are in a different class but because owner-occupied homes are typically better maintained and cared for. If a rented single-family residence and an owner-occupied single-family residence are in identical condition, the market will be indifferent to whether the owner occupies it. This is evidenced by the fact that it is common for homeowners to move to another location and rent their old home until it is sold. Plaintiffs submitted no evidence to show that homes converted to rentals sell for less due to the fact that they are now rented rather than owner-occupied. Logic indicates that it would be the condition of the home, not who lives there that determines the sale price.

*Fourteenth Amendment*

Plaintiffs assert, in generalities only, that using different methods to value residential properties violates their rights under the Fourteenth Amendment to the United States Constitution. As with Plaintiffs' arguments on uniformity, this arises from a lack of understanding of the relationship between constitutional principles and assessment practices.

Plaintiffs view this dispute as primarily a legal or theoretical issue under the constitution. Fundamentally, Plaintiffs believe that rented residential real estate is a single class of property that must be assessed using the same methods in order to achieve uniformity. However, this belief assumes property is assessed for taxation based on its investment value, not its real market value. Oregon's ad valorem property tax system requires property to be assessed at its real market value. The concept of real market value is different from the concept of investment value. While the latter is a legitimate valuation concept and is utilized in various market contexts, it is not the standard utilized in Oregon's property tax system. Accordingly, Plaintiffs are seeking uniformity based on an erroneous concept; one that is inconsistent with the system established by the legislature. *See First Interstate Bank v. Dept. of Rev.*, 10 OTR 452 (1987), *aff'd* 306 Or 450, 760 P2d 880 (1988). Oregon's system does not deprive Plaintiffs of due process or equal protection.

■■ In summary, ORS 308.205 establishes a value concept, not a method. The three traditional approaches to value and variations thereon are all attempts to measure this same value concept. Whether one approach is better than another depends upon the facts and circumstances. The classes of property provided for in OAR 150-308.215(1)-(A) are made to assist assessors in achieving uniformity in assessment. Such classifications do not violate provisions of either the federal or state constitutions. The Department of Revenue's Opinion and Order Nos. 94-1565 through 94-1608, 94-1611 through 94-6113, 95-2839, 95-2939 through 95-2953, and 95-2840 through 95-2862 must be sustained. Judgment will be entered accordingly. Defendant to recover its costs and disbursements.