DECISION
Plaintiffs have appealed the property taxes on their personal residence for the 2008-09 tax year. A hearing was held on the matter on April 27, 2009. Tony Ma (Ma) appeared for Plaintiffs. Ken Collmer represented Defendant. After some discussion the court concluded there was no legal basis for the relief Plaintiffs are requesting. Their appeal is therefore dismissed, as explained below.
 I. STATEMENT OF FACTS
Plaintiffs compared their tax year 2008-09 property taxes with the taxes of two allegedly similar houses (Accounts R483020 and R179325), one just two doors away and another 10 blocks away. According to Ma, both properties have taxes approximately $1,000 less than Plaintiffs' property. Plaintiffs have asked for a reduction in taxes to a level similar to the other two properties.
Plaintiffs' home, identified in the assessor's records as Account R122048, was built in 1997. The property identified by account R483020 (located two doors away) was built in 2000, and the property identified by account R179325 (10 blocks away) was built in 2006. The *Page 2 
changed property ratio"[1] applied to the market value of each property the first year it was built was different, because the properties were built in different years, and the ratio is determined each year based on then-current market data. That process is explained in the court's analysis below.
 II. ANALYSIS
The relief Plaintiffs seek is contrary to law for several reasons. First, the court's authority is generally limited to correcting property values, not property taxes. There is specific statutory authority for appealing property value, but in cases such as the present, there is no such authority for appealing property taxes.[2] See e.g., ORS 309.026(2)[3] (allowing taxpayers to appeal assessed value, real market value, and maximum assessed value to county board of property tax appeals); ORS309.110(7) (providing for appeal of county board orders to Tax Court);Gardner v. Lane County, TC-MD No 070201C, WL 2067062 *1 (July 9, 2007) (stating "[t]he fact that a property owner can appeal value, but not taxes, is evident from the statutes."); Becker v. Deschutes Cty., TC-MD No 040108C, WL 1238174 *2 (May 11, 2004) (so holding).
The second reason, as a matter of law, that the relief Plaintiffs seek is unavailable is that the constitutional requirements of uniformity were overridden by Measure 50, adopted by the *Page 3 
voters in May of 1997 as an amendment to Oregon's Constitution. Or Const, Art XI, § 11(1);[4] see Ellis v. Lorati, 14 OTR 525, 535
(1999). Moreover, when the uniformity requirements applied, they governed the apportionment of the tax throughout the county, mandating that the tax rate be the same for the same kinds of property. The measure used to apportion tax was (and is) value. Therefore, as long as the value is correct, the uniformity requirements are satisfied. SeeBrummell v. Dept. of Rev., 14 OTR 303 (1998). Uniformity in the sense of equal taxes imposed on allegedly similar neighboring properties was never required.[5] For purposes of taxpayer enlightenment, the court offers the following overview of Oregon's property tax system.
Measure 50 established a new method for calculating assessed value (AV) through the concept of maximum assessed value (MAV), which in 1997 was 90 percent of the property's 1995 real market value (RMV) on the rolls. See
Or Const, Art XI, § 11(1)(a).[6] Measure 50 is codified in ORS 308.142
to ORS 308.166. Under Measure 50, AV is the lesser of the property's MAV or RMV. ORS 308.146(2). RMV was, and continues to be, the most probable selling price of the property, in an arm's-length transaction, on the applicable assessment date. ORS 308.232; ORS 308.205. Although RMV moves with the market, "the property's maximum assessed value shall not increase by more than three percent from the previous tax year." Or Const, Art XI, § 11(1)(b); see also ORS 308.146(1), (2). Thus, once MAV was established *Page 4 
in 1997, it generally increases three percent annually. And, because MAV is typically lower than RMV, AV also rises three percent per year. RMV, on the other hand, has for many years typically outpaced the annual three percent cap on increases to MAV and AV. Thus, a reduction in RMV generally has no impact on MAV and AV, unless that reduction is large, or the gap between RMV and MAV is small. That point was made clear inGall v. Dept. of Rev., 17 OTR 268, 270 (2003), which ruled that "there is no linkage between the RMV and MAV" under Measure 50.
Again, the linkage does not exist because RMV is market driven, and MAV increases incrementally at a flat three percent each year. That factor makes the initial market value determination of new property the first year that it is added to the assessment and tax rolls critically important, because it determines the MAV for the "base year," which thereafter rises three percent each year (barring future changes to the property).
Plaintiffs' MAV was established in 1997, the year the home was added to the assessment and tax rolls at 100 percent complete. Ma testified that he paid $150,000 or $155,000 for the new home in 1997, and that Defendant set the RMV that year at $165,000. Defendant did not dispute those assertions. Ma further testified that he was a first-time homebuyer and was not familiar with Oregon's property tax system. In particular, he did not understand the importance of ensuring that the initial values were correct. Ma is unhappy with the fact that, by his estimation, he is "stuck" with an incorrect MAV because of what he perceives as an initial error in valuation (based on an RMV of $165,000 versus $150,000), which, in turn, generated an incorrect (high) MAV in 1997 (1997-98 tax year), an "error" he must live with forever. *Page 5 
Assuming that the "correct" RMV in 1997 was $150,000, rather than $165,000, [7] then Ma is correct that Plaintiffs' have an inflated MAV and AV, and that that error will carry forward forever, unless there is either a drastic decline in market value (RMV) or another change in Oregon's property tax system.
 III. CONCLUSION
The court concludes that Plaintiffs are not entitled to a reduction in property taxes to match the taxes Defendant has imposed on two nearby properties that Plaintiffs insist are very similar homes, with similar values, but lower taxes. No irregularity has been asserted or revealed in the way Plaintiffs' value and taxes were determined. Under the law, there is simply no provision for the type of relief Plaintiffs seek. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is dismissed as contrary to law.
Dated this ___ day of June 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed. *Page 6 This document was signed by Magistrate Dan Robinson on June 3, 2009. TheCourt filed and entered this document on June 3, 2009.
[1] The "changed property ratio" is a ratio set out in ORS 308.153(1)(b) as the "average maximum assessed value over the average real market value for the assessment year." See also OAR 150-308.156 (applying the term "changed property ratio" to the definition of the ratio). The ratio is applied to the market value of property added since the prior year. ORS308.146(3); ORS 308.153(1).
[2] ORS 305.580 provides for certain types of taxpayer appeals of taxes, including Measure 5 limits on taxation and bonded indebtedness questions, but the statute's application does not extend to property owners seeking tax reductions to achieve perceived equality with properties alleged to be similar. That is, a taxpayer cannot simply compare his or her taxes to a neighbor's taxes and ask the court to reduce taxes to match the neighbor's taxes. Oregon's property tax system imposes a tax on value, and value is the typical battleground.
[3] All references to the Oregon Revised Statutes (ORS) are to 2007.
[4] Subsection (18) of Article XI, section 11 (Measure 50) provides that "Section 32, Article I, and section 1, Article IX, of this Constitution, shall not apply to this section." Those sections require uniformity. Article I, section 32 provides in relevant part: "all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." Article IX, section 1, provides: "The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State."
[5] That result could often be achieved through an appeal of real market value which, prior to Measure 50, was generally the same as assessed value, meaning that a reduction in value to a level equal to a neighbor's home would generally result in equal taxes.
[6] Or Const, Art XI, § 11(1)(a) (providing that a property shall have a MAV for the 1997-98 tax year "that does not exceed the property's real market value for the tax year beginning July 1, 1995, reduced by 10 percent.").
[7] Purchase price is not necessarily the "value" of a property, although it is often a good indicator of a property's value. This court has previously noted that value is a range rather than an absolute.Price v. Dept. of Rev., 7 OTR 18, 25 (1977). The appraisal of property is highly subjective, and has led courts to a knowledge that "that [property] taxation is necessarily a practical problem and complete equality and uniformity must remain an ideal." Id. at 26. Nonetheless, the statutes require that each property have an RMV on the rolls each year and that number was, and is, used to establish an MAV for every property. *Page 1