136            January 28, 2013            No. 19

IN THE OREGON TAX COURT
REGULAR DIVISION

SEASIDE INVESTMENTS LLC,
dba Rivertide Suites Condominiums, et al,
*Plaintiffs,*

*v.*

CLATSOP COUNTY ASSESSOR,
*Defendant*,

*and*

DEPARTMENT OF REVENUE,
*Defendant-Intervenor.*

(TC 4966)

Plaintiffs (taxpayer) appealed the real market value of condominium units to the Magistrate Division of the Tax Court. The case was moved to the Regular Division on a joint petition for special designation. The parties disagreed on the highest and best use of the property, the methodology to be employed in the valuation exercise and whether there was substantial and nontaxable intangible business value inherent in the property. Following trial, the court found that taxpayer's appraiser had ignored the legal requirement that the property to be valued was each individual unit in the condominium and not the aggregate of the units. This error led to further errors and the court found taxpayer's appraisal to be unpersuasive and not reliable. The court therefore found that taxpayer failed to carry its burden of proof and concluded that the real market values as assessed by Defendant (the county) were correct.

Trial was held August 2, 2011, in the courtroom of the Oregon Tax Court, Salem.

Carmen J. SantaMaria, Duffy Kekel LLP, Portland, argued the cause for Plaintiffs (taxpayer).

Douglas M. Adair, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant-Intervenor (the department).

Decision for Defendant-Intervenor rendered January 28, 2013.

**HENRY C. BREITHAUPT, Judge.**

### I.   INTRODUCTION

This property tax case is before the court after trial. The year is the 2008-09 tax year and the assessment date is January 1, 2008.

## II.  FACTS

Other than the ultimate factual question as to the value of the property or properties in question, there is no real disagreement between the parties as to the historical facts involved in this case, which are these:

In 2007 the construction of Rivertide Suites was completed. Rivertide Suites is a condominium hotel comprised of 70 condominium units and related common properties, located in Seaside, Oregon. The units are of three sizes: studio, one-bedroom and two-bedroom.

An association of owners of the condominium units exists. It has entered into a management contract with an affiliate of the developer of the project, pursuant to which that affiliate manages all day-to-day operations of the project.

Beginning in September of 2007 and continuing into March of 2008 twelve units in the project were sold to purchasers unrelated to the developer with the exception of one unit sold to an employee of the developer. These sales were completed at the asking price at the time of the purchase agreement. Those asking prices continued to be advertised by the developer as of the assessment date.

To ensure compliance with the zoning ordinances of Seaside, owners of condominium units may not occupy a unit for more than 29 days per year. Unit owners may, and all initial purchasers did, participate in a rental pool. Revenues from such rental activity, after deduction of expenses, including payment of the management fee, are divided among the owners participating in the rental pool. As of the assessment date there had been only several months of actual operation of the project.

Rental activity is conducted by the management entity and involves use of internet marketing programs. Other than rental activity, the record does not establish that there are any substantial project profit centers such as food services, meeting and event services, phone service, valet service, laundry service, health club service or business center service. Rivertide Suites is not affiliated with any hotel or resort operator maintaining a "flag," "brand," or coordinated reservation system.

## III.   ISSUE

The issue in this appeal is the real market value, as of January 1, 2008, of each of the condominium units.

## IV.   ANALYSIS

The parties do not disagree that the property to be valued in this case is each of the condominium units rather than the project as a whole. ORS 100.555(1)(a); *Lewis v. State of Oregon*, 302 Or 289, 728 P2d 1378 (1986). However, as to the highest and best use of the property subject to taxation, the expert witnesses for the parties disagree. The expert witness for Defendant Clatsop County Assessor and Defendant-Intervenor Department of Revenue (collectively referred to in this opinion as "the department") concluded that continued "use of each of the 70 legally distinct condos as a condo hotel is clearly the highest and best use of the subject property as improved." However, the expert witness for Plaintiffs (taxpayer) concluded that "the highest and best use of the Rivertide Suites' 70 condominium hotel units, as restricted by the City of Seaside and as governed and regulated by the Condominium Declaration and Disclosure, is for the 70 units to be managed, operated and maintained as an upscale, extended-stay hotel to the collective financial benefit of all 70 unit owners."

In his conclusion as to highest and best use, the expert for taxpayer seems to have ignored the legal requirement that the property to be valued is each individual unit in the condominium and not the aggregate of the units. That error, as will be seen, leads to other errors.

Ultimately, the parties disagree on two other important points, those being the methodology to be employed in the valuation exercise and whether there is substantial and nontaxable intangible business value inherent in the property. Intangible business value, if it exists, is not subject to taxation in Oregon except as to so-called "centrally assessed" properties, a category in which the property in this case is not included.

A.   *The Disagreement as to Methodology*

As to methodology, the expert witness for taxpayer developed an opinion of value for the entire project, treating

the project as a hotel, and then allocated that total value to the various individual condominium units that are the subject of this appeal. This approach appears to have been driven by the erroneous conclusion of the expert as to the highest and best use of the property to be valued, namely each condominium unit and not the collection of the units. Taxpayer's expert employed only the cost and income indicators of value for the entire project.

The expert witness for the department addressed only the value of individual units. The department's expert relied only on the comparable sales indicator of value and based his opinion of value on the sales of units in the project that bracketed the assessment date as well as other evidence of sales of condominium units he considered comparable to the subject property—each individual unit in the project.

B. *Comparable Sales Indicator*

The highest and best use conclusion of taxpayer's expert, and the valuation decisions driven by that conclusion, substantially affected the approach of taxpayer's expert. Having concluded that he must value the project as a whole, that expert further concluded that only the cost and income indicators of value should be considered. He concluded that the comparable sales indicator could not be used—primarily because, in his view, comparable sales data for hotels was most often available only for transactions involving groups of hotel properties. The expert further concluded that there was no good way to allocate "package" sales data among the hotels included in the "package."

The expert for taxpayer recognized that there was, in fact, comparable sales data for the individual condominium units at the project—namely the sales data for the sales of units in the project that bracketed the assessment date. The expert discarded this data, however, on the basis that securities law rules limiting provision of information directly by the developer to potential purchasers rendered those purchasers so uninformed as to render the individual sales invalid as fair market value transactions.

The individual condominium units are what is to be valued in this case. Those values include a proportionate

share of common elements of the condominium. Given this subject of valuation, the court cannot accept the approach taken by taxpayer's expert. That expert refused to consider the comparable sales indicator even though there were sales of the precise properties to be valued that bracketed the assessment date. Why? The first reason that the expert for taxpayer ignored actual unit sales was premised on the view that the value of individual units should proceed only by first determining the value of the entire project, a subject as to which the appraiser then concluded good data was not available due to the "package sale" problem.

However, this rejection of data on sales of hotels presupposes that the assumption of taxpayer's expert as to the proper starting point is correct. However, the opinion of taxpayer's expert in this regard finds no support in this record other than the opinion of the expert himself, an opinion substantially, if not fatally, weakened by the fact that his approach is inconsistent with Oregon law on the subject of valuation in the case of condominiums. When valuing such individual units, an authoritative source for the appraisal industry recognizes that individual units should not be valued by valuing the entire project and then allocating total value to individual units. Appraisal Institute, *The Appraisal of Real Estate* 639 (13th ed 2008).[1]

Further, having concluded for himself that data was unavailable on hotel sales, the expert failed to persuade the court that data on individual unit sales should, as he did, be entirely ignored.

Taxpayer's expert rejected that data because of his conclusion that the purchasers in those transactions did not have adequate information regarding the property being purchased. However, the record in this matter not only fails

---

[1] Taxpayer at times attacks the status of *The Appraisal of Real Estate* as authoritative. However, taxpayer's appraiser at numerous places in its appraisal relies on that authority. In this regard the court finds *The Appraisal of Real Estate* to be persuasive and consistent with the positions announced by the department as to proper valuation of condominiums. The department's views are of particular importance given the provisions of ORS 308.205(2). *See Ernst Brothers Corp. v. Dept. of Rev.*, 320 Or 294, 297-98, 882 P2d 591 (1994) (noting that the department establishes by rule the methods for determining the real market value of property for assessment purposes).

to support that conclusion, it provides ample basis for a finding that the purchasers were informed buyers acting under no duress. The purchasers here included quite sophisticated persons with experience in accounting, real estate, and law. Their testimony does not support the conclusion that they were acting without the information they considered necessary. To the contrary, the testimony indicates that they had the ability to, and did, consider carefully the investment they were about to make. Further, while the developer, to simplify securities law compliance rules, chose to limit the amount of information it provided to the purchasers, taxpayer, bearing the burden of proof in this case, did not show that the purchasers did not have available to them from other sources the information on this type of property and operation that they considered important.

C.   *Cost Indicator*

As to the cost indicator of value, the expert for taxpayer used the cost for the entire project. Using that data, the expert developed a conclusion of value for the entire project which he then allocated to individual units.

The expert for the department concluded that the cost indicator was not reliable in this case, primarily because the property to be appraised was each of the individual condominium units. In valuing that property, the department's expert concluded that there was no reliable way to separately determine the cost for the individual units. Recognized authorities support this conclusion. *The Appraisal of Real Estate* 639 (13th ed 2008) ("The cost approach is usually not applicable in the appraisal of any type of condominium unit because it is difficult to estimate site value and the contributory value of common elements.").

The court is of the opinion that the view of the department appraiser is, by far, the better view as to the usefulness of the cost approach in this case.

D.   *Income Indicator*

The condominium units and project had just been completed and had little or no operating history. However, notwithstanding these problems, taxpayer's expert chose to rely on the income indicator. He did not adequately explain

how project income and expense could reliably be assigned to individual units—the subject of the appraisal problem. *The Appraisal of Real Estate* recognizes that the income indicator can be used in valuing an entire project but that valuation of individual units is a different and distinct assignment. *Id.*

The court believes, based on these authorities, that the reliance taxpayer's appraiser placed on the income indicator is not warranted. In addition, this was a recently completed project with little or no actual operating history. Indeed, taxpayer's appraiser recognized that there was not a stabilized income for use in the income indicator. Therefore, taxpayer's appraiser relied on estimates of operating information and actual information from later periods. Each of those choices further calls into question the reliability of any conclusion of value.

E.  *The Dispute as to Intangible Business Value*

The foregoing conclusions of the court are enough to support a conclusion that taxpayer has not borne its burden of proof in this case. However, the court also rejects the opinion of the expert for taxpayer because of the conclusion of that expert as to the existence of intangible business value in what the developer sold and the purchasers of units bought. The court uses the word "conclusion" advisedly. Taxpayer's expert often stated his conclusion that such value existed but provided the court with little or no analysis to support that conclusion.

As to intangible business value, the expert witness for taxpayer concluded there was substantial value of this type and that such value would have to be subtracted from any value conclusion for the project as a whole or the value conclusion for an individual unit. The expert witness for the department concluded that there was no material amount of intangible business value associated with either the project as a whole or the individual units and that values determined for each individual unit would be the amount of taxable value.

The representatives of taxpayer seemed to be unsure as to where the business value for which they contended

existed. On occasion the testimony and briefing suggests that the value is located in the Owner's Association of Rivertide Suites. However, on brief, taxpayer stated that the value was inherent in the individual units owned by various persons.

Although there is some debate as to whether business value exists in a hotel or property similar to a hotel, the leading commentators in the appraisal community appear to agree that if such value exists, it is an element of value above that attributable to the income generated by the taxable real estate itself. *See, e.g.*, Stephen Rushmore, *Hotels and Motels: A Guide to Market Analysis, Investment Analysis, and Valuations* 243-44 (1992); William Kinnard, Jr., Elaine Worzala and Dan Swango, *Intangible Assets in an Operating First-Class Downtown Hotel*, The Appraisal Journal 70-71 (Jan 2001). There is no debate that the value of a property attributable to the income generating capacity of the improved property alone is not nontaxable business value. If this were not true, the value of a basic apartment house would be attributable to business value instead of value of land and improvements. Intangible business value exists when there is some "extra" element attributable to the combination of assets or productive capacity or the successful operation of productive elements over time and in a way that produces a premium over simple capitalization of income from any given component.

Intangible business value for a hotel or similar property is thus not value attributable to the income from the provision of rooms alone but rather value above that related to the presence of such things as:

(1)   Working capital;

(2)   An assembled and trained work force;

(3)   The name and reputation of an individual hotel;

(4)   Affiliation with a chain or association that provides a reservation system, a referral system for members, group advertising and an identifiable and recognized name or "flag"; and

(5)    Profit centers (usually guest services) such as food and beverage, meetings and events, telephone, valet, laundry, parking and health club.

*Id.* at 70.

Although the record in this case indicates that the project has a reservation system, and working capital, it does not indicate that the other elements of intangible value were present, at least as of January 1, 2008. As of that time there is no evidence of an assembled and trained workforce, an established or recognized name, an affiliation with an association, a "flag" or any significant "profit center" activity. Further, taxpayer's expert did not attempt to quantify any element of business value, testifying at one point that he was not qualified to do so.

On brief, taxpayer identifies the intangible value as being goodwill. A value for goodwill can exist but it is a product of the operation of business assets over time. The court cannot conclude that, at a point less than a year after completion, either the project or the individual units at issue here had any material amount of goodwill associated with them.

Goodwill or intangible business value can also be attributable to special skill in the operation of taxable real property and improvements.[2] However, the appraiser for taxpayer failed to address the significance of the fact that a management contract existed between the owners of the property in question and an unrelated third party under which the third party provided management skill and expertise to the project. The existence of that contract indicates to the court that an important potential element of intangible value—that attributable to skilled management—was most probably realized by the manager and not by the owners of the subject property. In this regard there was no showing by the taxpayer that the compensation arrangement with the manager was other than at fair market compensation levels, considering the experience and expertise that the manager brought to the project and about which the purchasers were quite aware. Such a showing would be a necessary element

---

[2] That ordinary skill is assumed in market analysis.

in demonstrating that an intangible business value attributable to expert management was present in the project and its component parts.

The position of taxpayer's appraiser as to the existence and amount of intangible business value is simply not persuasive or reliable. This combines with the same conclusion of the court, stated above, as to the highest and best use conclusions of the expert and the valuation approach of taxpayer as to the units themselves. Coupled with these conclusions is the conclusion of the court that the actual comparable sales of units in this project at or about the time of the assessment date are very good indicators of value. The other sales used by the appraiser for the department serve to confirm the indications from the sales of units in the subject project.

The court finds that the real market value determinations for which the department contends are correct.

## V.   CONCLUSION

Now, therefore,

IT IS THE OPINION OF THIS COURT that the real market value of the subject property as of January 1, 2008, was as determined by Defendant Clatsop County Assessor.