Argued and submitted September 4, affirmed November 25, 1986

# LEWIS et al,
*Appellants,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent.*

## (OTC 2205; SC S32246)

728 P2d 1378

Carlton P. Loennig, Portland, argued the cause for appellants. With him on the brief was Barton & Loennig, Portland.

Marilyn J. Harbur, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Dave Frohnmayer, Attorney General, Salem.

LINDE, J.

**LINDE, J.**

Taxpayers appeal from a decision of the Oregon Tax Court affirming the assessment of taxpayers' units in a beachfront condominium, which are pooled for rentals through a common management, on the basis of their value as individual parcels of real property rather than as fractional interests in a motel.

We take a summary of the facts from the opinion of the tax court:

> "Appealing plaintiffs are individual owners of 18 condominium units. The units are part of the 63-unit complex located in Lincoln County known as the "D" Sands Motel. * * * The complex was constructed with the intent and purpose of being owned under the condominium laws but to be operated as a commercial motel. The owners of the units, therefore, purchased such units primarily as individual investments.
>
> "Plaintiff Lewis testified that the owners of the condominium units are partners in two partnerships. One 'partnership' is the unit owners association, apparently unincorporated, provided for in ORS 94.146 to govern the common elements. The other 'partnership' is the rental agreement which provides for operation as a motel. While a unit owner must be a member of the unit owners' association, the owner may elect whether to participate in the rental program. Virtually all unit owners participate in the rental program. Unit owners participating in the rental program who use their unit for their personal use do not pay the usual 'rent' but a small amount intended to cover cleaning costs.
>
> "The motel operates like a partnership in the sense that the income received by the motel from the rental of all units is placed in a single pool. Any net income remaining in the pool after the payment of operating expenses is divided between the unit owners participating in the rental program in proportion to the percent of interest that their unit bears to the entire complex, adjusted for personal use time."

*Lewis v. Dept. of Revenue,* 10 OTR 128, 128-29 (1985) (footnote omitted).

The appraiser from the Lincoln County Assessor's Office based his opinion of the value of taxpayers' individual condominium units on the sales prices of comparable units in the same complex. Taxpayers contend that the entire complex

should be valued as a motel, and their witness appraised it according to taxpayers' theory, which produced substantially lower values for the whole and therefore for each unit. Taxpayers also contend that the sales prices of individual units include certain intangibles, such as cash and accounts receivable as well as business value, that must be subtracted from the sale price in order to determine the assessed real property value of each unit. Like the tax court, we deal with these issues separately.

■    First, taxpayers argue that the three "common approaches" to valuing real property are the "market approach," the "cost approach," and the "income approach," and that "[a]ll three must be used to determine the appropriateness of the value with which the property is to be assessed." The latter is not correct. The department may prescribe a method of valuation by rules, ORS 306.120, ORS 308.205, but in the absence of a single prescribed method, the proper method is itself a matter to be resolved by evidence, if it is disputed. We have said, in connection with parties' citation of a judicial precedent to establish a method of valuation:

> "Adoption of that method was not the statement of a 'legal principle' or a rule of law. As a 'holding' it was merely a finding of fact on the record before the court that the method should be applied in that case and a disposition of the factual controversy by application of that appraisal method."

*Bend Millwork v. Dept. of Revenue,* 285 Or 577, 586, 592 P2d 986 (1979).[1]

---

[1] The *Bend Millwork* opinion continued, referring to the precedent cited by the parties:

"Plaintiff and defendant [in that case] *agreed* the method was the best one to use. * * * [W]e ended that opinion in such manner as to make it clear that we had acted in our role as fact finder.

" '* * * We hold that the foregoing amount is the fair market value of the subject property * * * as shown by the evidence in this case.

" 'This holding does not constitute the rule that the methods used to determine functional obsolescence in this case are necessary or appropriate in all cases *as a matter of law.* It may be that other and better methods are available or will be developed in the future. It might even be that a different record will show the method approved to day [sic] is subject to significant inadequacies. * * * ' "

*Bend Millwork v. Dept. of Revenue,* 285 Or 577, 586, 592 P2d 986 (1979), *quoting Publishers Paper Co. v. Dept. of Rev.,* 270 Or 737, 756, 530 P2d 88 (1974) (emphasis in

■     What the Department of Revenue's rule states is not that the "market data approach, cost approach, and income approach" must all be employed, but that "[a]ny one of the three approaches to value may finally be used * * *." OAR 150-308.205-(A)2. *See Burlington Northern v. Dept. of Rev.,* 291 Or 729, 733-34, 635 P2d 347 (1981). Taxpayers therefore had the burden to show by evidence that a correct appraisal depended on the adoption of their preferred method of valuing the units as factional interests in a motel. ORS 305.427.

The department, in turn, cites ORS 94.285 as requiring assessors to value each condominium unit as a separate parcel. That statute provides:

"(1)   Each unit with its allocation of undivided interest in the common elements shall be considered a parcel of real property, whether leased or in fee simple, subject to separate assessment and taxation by any taxing unit in like manner as other parcels of real property. A unit based upon a declaration filed by the owner of a leasehold estate shall be assessed in the name of the unit owner and not in the name of the owner of the fee or of the leasehold estate upon which the declaration is based. Neither the building, the property nor any of the common elements shall be considered a separate parcel for purposes of taxation.

"(2)   In determining the true cash value of a unit with its undivided interest in the common elements, the county assessor may use the allocation of undivided interest in the common elements appertaining to a unit as expressed in the declaration. * * *

"* * * * *

"(4)   The Department of Revenue shall have the authority to make rules and regulations prescribing methods best calculated to secure uniformity according to law in the appraisal and assessment of units constituting part of a property submitted to the provisions of ORS 94.004 to 94.480 and 94.991."

Taxpayers contend that the statute prescribes only "separate assessment and taxation" of condominium units, not separate valuation of each. The department counters by pointing to the

original). *See also Southern Oregon Broadcasting Co. v. Dept. of Revenue,* 287 Or 35, 42, 597 P2d 795 (1979); *Brooks Resources Corp. v. Dept. of Revenue,* 286 Or 499, 503-04, 595 P2d 1358 (1979).

reference at the beginning of subsection (2) to "determining the true cash value of a unit." The tax court did not quote subsection (2) but agreed with the department's conclusion, apparently on the theory that subsection (1)'s command of individual assessment and taxation implied individual valuation.

We are inclined to agree that ORS 94.285 contemplates individual valuation as well as assessment of condominium units, but this does not necessarily determine the method of valuing the units. *See* OAR 150-308.205-(A)2. The department has not prescribed uniform methods of valuing condominiums under ORS 94.285. We therefore look to the evidence before the tax court on that question.

The testimony of taxpayers' appraiser is of no help on the question how the value of individually owned units in a condominium that is operated for rental purposes like a motel should be determined. He was not asked about the proper method of valuation, whether as a species of investment in a commercial tourist enterprise or as private quarters pooled for rental management. His testimony and his report to plaintiff Lewis state that his instructions were to estimate the value of the "D" Sands as an operating commercial motel, with title in fee simple, and that is what he did. He concluded that, as a motel, the "D" Sands should be valued at $1,512,000 and that the individual condominium units should be assessed at $26,971 for the larger units and $18,058 for the smaller units.

The department's witness, who had appraised the "D" Sands condominium units for the Lincoln County assessor, similarly did not offer his own expert opinion that recent sales of individual units were the correct method of appraising such units; he testified that he used that method because he understood that the department required it.[2] His resulting appraisal of the two types of units is not contradicted apart from the choice of method itself.

■    The dispute is not about the numbers but only about the proper method of valuation. Taxpayers argued their position rather than prove it by the testimony of their expert

---

[2] The witness cited a 1983 letter from one of the department's district managers to one of the taxpayers. The status of that letter as a "rule," ORS 305.100, a "declaratory ruling," ORS 305.110, or an "instruction," ORS 305.110, was not briefed or discussed.

witness. They did not carry their burden to prove the department's choice of method wrong.

Apart from their chief argument that the "D" Sands condominiums should be appraised as a single operating motel and the appraised value then allocated to the separate units, taxpayers raise a second objection to the assessments. They contend that the assessed value of each unit includes the value of certain "intangibles" and "personal property" that are not "real property" and that may not be assessed or taxed as real property. The asserted intangible values include the "business value" of the property and each owner's share in certain accumulated funds in a pool of rental income not yet distributed to the owners.

■ We conclude that the parties' disagreement about these intangibles is a facet of the larger dispute about valuing the units individually rather than as a single operating motel and is resolved by our decision of that issue. Taxpayers relied on evidence that hotels and motels are valued not as empty structures but as income-earning facilities, in which the real property component of their total value is determined by capitalizing net income and subtracting "business value" and the value of personal property. As already stated, however, taxpayers' witness did not testify as to why the "D" Sands property should be appraised as a single operating motel, he was instructed to assume it, and we have concluded that taxpayers did not prove this proposition.

Taxpayers also did not prove their secondary claims concerning business value and accumulated funds. The extent to which a unit would participate in the rental program or would be reserved for personal use was left to the individual owners. Apart from the primary claim for valuation of the whole condominium project as a motel, there is no evidence that individual rental units should be appraised by the method of subtracting "business value" from capitalized earnings rather than simply by their market value, though that market value may, in part, reflect their potential of earning rental income.

■ As to the interest in the undistributed rental income attributable to participating condominium units, the tax court wrote with respect to the different interests in the rental pool:

"The evidence did not show that there were substantial sums held in the rental pool from time to time which, when allocated between the participating unit owners, constituted a significant sum for each unit. However, whether the sales prices reflect the nontaxable assets above and beyond the amounts allowed by defendant's appraiser is not ascertainable from the evidence. In the absence of some allocation, the court will not assume that purchasers add a prorated dollar amount of partnership interest to the value of the unit in order to come up with a purchase price. More specifically, there is no evidence that the unit owner's interest in the rental pool reserves or income is transferred with the unit when it is sold. Plaintiffs have failed to carry their burden of proof with regard to establishing a lower value for the condominium units."

We agree with this conclusion of the tax court.

The decision of the Oregon Tax Court is affirmed.