Karl S. TALARICO,
Trustee,
Sylvia M. Talarico,
Trustee of the Talarico Family Trust,
*Plaintiffs,*

*v.*

DESCHUTES COUNTY ASSESSOR,
*Defendant.*

(TC-MD 010467F)

A trial was held by telephone September 10, 2001.

Karl Talarico, Plaintiff (taxpayer), argued the cause *pro se.*

Theresa Maul, Lead Residential Appraisal, Deschutes County Assessor, argued the cause for Defendant (the county).

Decision for Plaintiffs rendered November 23, 2001.

**SALLY L. KIMSEY, Magistrate.**

This matter is before the court on Plaintiffs' appeal of the real market value of a one-fifth undivided interest of a condominium for tax year 2000-2001. A trial was held on September 10, 2001. Karl Talarico appeared for Plaintiffs. Theresa Maul, Lead Residential Appraisal, appeared for Defendant. The property is identified as Deschutes County Assessor's Account 181207BD 80325. The one-fifth undivided interest is identified as Deschutes County Assessor's Account 181207BD 80325 U4.

The Complaint was submitted as a small claims case. For the reasons discussed below, this matter is not appropriately heard as a small claims case. The court will process the appeal as a standard designation and waive the additional filing fee.

## I. STATEMENT OF FACTS

Plaintiffs purchased their one-fifth undivided interest in the subject property in May 1993 for $54,750. For tax year 2000-2001, Defendant sent each owner of an undivided interest in the subject property a separate tax statement. Those tax statements showed a real market value of each one-fifth undivided interest of $67,675. Plaintiffs appealed to their board of property tax appeals (BOPTA). BOPTA lowered the value of the one-fifth undivided interest to $60,000.

Plaintiffs timely appealed the BOPTA order to the Magistrate Division.

The subject property is a two bedroom condominium located at Mount Bachelor Village Resort in Bend. It is part of a development called River Ridge. River Ridge I consists of 11 buildings. River Ridge II consists of nine buildings. Each of the 20 buildings contains four condominium units. The two ground floor units in each building are two bedroom units. The second floor units are three bedroom units. There is one floor plan for the two bedroom units and one for the three bedroom units. All of the units except those in buildings one and three have a view of the Deschutes River. Buildings one and three are in River Ridge II. There are no structural differences between River Ridge I and II. The only difference is that the units in River Ridge I were sold as one-fifth undivided interests while the units in River Ridge II were sold as wholly owned units.

Plaintiffs own a one-fifth undivided interest in unit 325. Unit 325 is located in building 13, in River Ridge I. Each unit in River Ridge I was originally marketed and sold as five one-fifth undivided interests. Each one-fifth undivided interest entitles the owner to use the unit for ten weeks, at specified times. In most of the units, including the subject property, the one-fifth undivided interest entitles the owner to use the unit every fifth week, for a total of ten weeks. In those units the sales price of a one-fifth undivided interest is relatively constant. In a few of the units, the one-fifth undivided interests are sold as ten-week blocks of time. In those units there is a greater variation in sales prices depending on which ten-week block of time is being purchased. For example, Defendant's comparable sale one sold for $62,000 in August 2000. It is unit 321. Talarico testified that the five sets of owners of unit 321 own ten-week blocks of time instead of every fifth week. He further testified that the sales prices of those ten-week blocks has ranged from $42,000 to $82,000, depending on the desirability of the ten-week block.

Plaintiffs submitted a list of sales that occurred in Mount Bachelor Village Resort during 1999. Included on that list were five sales of River Ridge I condominiums, including

four sales of whole units.[1] Two of those sales were whole unit sales of three bedroom condominiums. One sold for $395,000 in May 1999. The second sold for $350,000, also in May 1999. Two sales on the list were whole unit sales of two bedroom units. Unit 314 sold in June 1999 for $265,000. Unit 316 sold for $263,000 in August 1999. However, unit 316 sold as part of an Internal Revenue Code section 1031 exchange. Finally, there was one sale of a one-fifth undivided interest in a two bedroom unit. A one-fifth undivided interest in unit 329 sold for $42,000 in August 1999.

Plaintiffs also submitted copies of warranty deeds for two sales of one-fifth undivided interests. A one-fifth undivided interest in unit 323 sold for $52,000 in September 2000. A one-fifth undivided interest in unit 330 sold for $42,000 in January 2001. Both unit 323 and 330 are two bedroom units. There was no testimony as to whether any of these one-fifth undivided interests entitled their owners to use the units every fifth week or in a ten-week block.[2] Last, Plaintiffs submitted a list of units available for sale in River Ridge I. The list was printed in July 2001. Included were six listings for one-fifth undivided interests of two bedroom units. Two of the listings were for one-fifth undivided interests in unit 325, the subject property. Unit 325-A was listed at $45,000. Unit 325-C was listed at $52,900.

Defendant submitted four comparable sales. Two of the sales were sales of one-fifth undivided interest in two bedroom units. A one-fifth undivided interest in unit 321 sold for $62,000 in August 2000. As noted earlier, however, unit 321's one-fifth undivided interests are in ten-week blocks. A one-fifth undivided interest in unit 330 sold for $60,300 in December 1999. Comparable sale four is a three bedroom unit that sold as a whole in September 1999 for $405,000. Comparable sale three is a two bedroom unit in River Ridge II that sold as a whole in September 2000 for $300,000.

---

[1] Although River Ridge I units may have been originally marketed as one-fifth undivided interests, at least some of them apparently later sold as whole units.

[2] Both of the warranty deeds refer to a "Declaration of Unit Ownership." Presumably, these recorded documents would set forth whether these one-fifth undivided interests were every fifth week or in ten-week blocks.

When valuing the units, Defendant based the real market value "on what the condominium would sell for on the open market as a complete unit. Undivided interest is not considered."

## II. ANALYSIS

### A. *Valuation of Time Share Condominium Units*

■    In determining the value of a condominium unit, the legislature has determined that, "[e]*ach unit* with its allocation of undivided interest in the common elements *shall be considered a parcel of real property*, whether leased or in fee simple, subject to separate assessment and taxation by any taxing unit in like manner as other parcels of real property." ORS 100.555(1)[3] (emphasis added). The Oregon Supreme Court held in *Lewis v. Dept. of Rev.*, 302 Or 289, 294, 728 P2d 1378 (1986), that "ORS 94.285 [ORS 94.285 was renumbered to ORS 100.555] contemplates individual valuation as well as assessment of condominium units."

■■    According to the above, each condominium unit is considered a parcel of real property and is valued as such. Each one-fifth undivided interest in a condominium is merely an undivided interest in a parcel of real property.[4] By virtue of ORS 308.125, an assessor may generate separate tax statements for each undivided interest. ORS 308.125(1). That statute is an administrative convenience for the owners of the undivided interests.

■    However, ORS 308.125(1) does not require the undivided interests to be separately valued. Indeed, ORS 308.125(1) provides that an owner of an undivided interest may pay the related taxes on the interest "by paying the tax collector a sum equal to such proportion of the entire taxes charged on the entire tract as the interest paid on bears to the whole." In other words, an owner of a one-fifth undivided interest of a parcel of property could pay one-fifth of the

---

[3] All references to the Oregon Revised Statutes (ORS) are to 1999.

[4] As such, the owners of the one-fifth undivided interests are tenants in common. A tenant in common is defined as "[o]ne of two or more tenants who hold the same land by unity of possession but by separate and distinct titles, with each person having an equal right to possess the whole property but no right of survivorship." *Black's Law Dictionary* 1479 (7th ed 1999).

entire taxes. Separately valuing the interests would be inconsistent with the proportional payment of taxes.

## B. *Conversion to Standard Designation*

██  As the owners of an undivided interest in the property, the Plaintiffs filed an appeal to BOPTA. BOPTA reduced the value of the account from $67,675 to $60,000. The order states that "[t]he Board * * * finds the values on the tax roll of the hereinafter described *property*." (Emphasis added.) BOPTA appears to have valued the Plaintiffs' one-fifth undivided interest rather than the entire parcel of real property, *i.e.*, the condominium unit.

By its terms, the BOPTA order for the subject account applied only to the subject account. It is not known whether any of the other four owners of the one-fifth undivided interests appealed to BOPTA.[5] It is also not known what value the Defendant placed on the property after the Plaintiffs' successful appeal to BOPTA. Presumably, the real market value of unit 325 after the Plaintiffs' BOPTA appeal was somewhere between $300,000[6] and $330,700.[7]

ORS 305.514 sets forth which types of claims may be filed as small claims proceedings. For matters involving the value of property the statute states:

"(1)   A plaintiff may elect to file a small claims procedure in the following classes of cases:

"* * * * *

"(b)   A proceeding by a taxpayer in any property tax case in which a taxpayer has the right to appeal and that involves only the question of the assessed or specially assessed value of real or personal property, where a board

---

[5] It is likely that in unit 325's Declaration of Unit Ownership or in the Covenants or the Conditions and Restrictions for River Ridge, there is a restriction on owners of undivided interests that would prohibit an appeal to either BOPTA or this court. Such a restriction would not prevent this from being a valid appeal. The Plaintiffs have an ownership interest. They are responsible for paying their share of the taxes. They are no different from any other tenants in common. By virtue of the Plaintiffs' appeal, the owners of the other four one-fifth undivided interests are bound by this court's Decision unless they appeal.

[6] Five one-fifth undivided interests x $60,000 = $300,000.

[7] (Four one-fifth undivided interests x $67,675) + (one-fifth undivided interest x $60,000) = $330,700.

of property tax appeals (by order of the board), an assessor or a tax collector has determined that the assessed or specially assessed value of:

"* * * * *

"(C)   Both a parcel of land and the improvement are not in excess of $ 250,000."[8]

As noted above, after the Plaintiffs' successful appeal to BOPTA, unit 325 was valued somewhere between $300,000 and $330,700. The real market value assigned to the subject property is simply greater than the upper limit of small claims jurisdiction.

## C.   *Valuation of the Subject Property*

The issue before the court is the real market value of the individual condominium unit, not the value of the undivided one-fifth interests. Because the court is valuing the entire condominium unit, it declines to give much weight to sales of one-fifth undivided interests. This is particularly true since some of the sales of one-fifth undivided interests represent the use of a condominium unit for a ten-week block of time rather than every fifth week.

The parties presented the court with three comparable sales of two bedroom condominium units that sold as whole units. Two of those sales were for nearly identical amounts. As noted above, one sold in June 1999 for $265,000. The second sold in August 1999 for $263,000. The August sale was a part of a section 1031 exchange. Because of the tax planning issues inherent in section 1031 exchanges, the court views such transactions as not necessarily reflective of the market. In this case, however, there is another sale for almost the same amount. The third sale was for $300,000 in September 2000. The first two sales were closer in time to the assessment date.

---

[8] The property tax statements for condominiums include an allocation for the undivided interest in the common elements such as the land upon which the condominium development sits. *See* ORS 100.555. This means that because of the special nature of condominiums, their value includes components of both land and improvements.

After considering the three comparable sales, the court finds that the value of unit 325, as of January 1, 2000, was $280,000. The Plaintiffs' proportional share, as owners of a one-fifth undivided interest in unit 325, was $56,000.

## III. CONCLUSION

As noted above, the separate tax statements generated for the undivided interests are merely an administrative convenience. The condominium unit is what is being valued, not the individual undivided interests. The court found the value of unit 325 to be $280,000. Necessarily the five undivided interests shall be assigned their proportional share, or $56,000 for each one-fifth undivided interest. Now, therefore,

IT IS THE DECISION OF THE COURT that the real market value of the property located in Deschutes County known as River Ridge Condominium I, unit 325, shall be $280,000 for tax year 2000-2001.

IT IS FURTHER DECIDED that the proportional share of unit 325's real market value shall be $56,000 for tax year 2000-2001 of Deschutes County Account 181207BD 80325 U4.

IT IS FURTHER DECIDED that the proportional share of each of the remaining four one-fifth interests of the property located in Deschutes County known as River Ridge Condominiums, unit 325 shall be $56,000.

IT IS FURTHER DECIDED that the county shall correct the assessment and tax rolls to reflect the above values. Any refund due shall be promptly paid with statutory interest.