DECISION
Plaintiff has appealed the value of a condominium unit (condo) for the 2008-09 tax year. Trial was held October 21, 2009. Plaintiff appeared on his own behalf. Defendant was represented by Todd Straughan (Straughan), an appraiser with the Deschutes County assessor's office.
 I. STATEMENT OF FACTS
The subject property is a two bedroom, two bath, condo unit in Riverview Vista Estates, a Planned Unit Development (PUD) located within Eagle Crest. Eagle Crest is a destination resort roughly five miles west of the city of Redmond, in Central Oregon. The resort consists of full-time residences, vacation/rental homes, and overnight lodging. The resort has an 18 hole golf course, a pro shop, a spa, hotel and restaurants. (Def's Ex A at 1.)
The property is a 1,168 square foot, two-story unit built in 1990, with 809 square feet of living space on the main level and 359 square feet upstairs. (Id). There is also a 170 square foot storage area. (Id). Plaintiff purchased a 60 percent interest in a one-fifth share in the unit in September 2006 for $22,000. (Id.) Plaintiff has a partner who owns the other forty percent of their one-fifth share. (Def's Ex B at 2.) The account number for their one-fifth share is *Page 2 
15-12-24-CB-00400-U4. (Id.) There are four other fractional owners of undivided one-fifth shares in the subject unit.
The property is specifically described in the legal documents as a "condominium," and not a timeshare. (Def's Ex C at 1, 3.)
Defendant set the total real market value (RMV) for the unit at $228,800, with $107,250 ascribed to the land and $121,550 to the improvement. (Ptf s Compl at 3.) The resulting RMV for each one-fifth interest was $45,760. (Id.) An appeal was filed with the county board of property tax appeals (BOPTA), and the BOPTA reduced the total RMV to $186,350, or $37,270 per one-fifth interest. (Id.) The maximum assessed value (MAV) was sustained at $200,400. (Id.) Because the RMV of $186,350 is less than a MAV of $200,400, the assessed value (AV) is $186,350 (and $37,270 per unit). (Id. at 4.)
Plaintiff has appealed the BOPTA decision to this court, seeking a reduction in his one-fifth interest to $21,500, for a total RMV for the unit (excluding the land) of $107,500.[1] (Ptf s Compl at 1.) Defendant has asked the court to sustain the BOPTA values.
 II. ISSUE
The issue in this case is the RMV of Plaintiff s undivided one-fifth interest in his condominium unit on the applicable assessment date for the 2008-09 tax year.
 III. ANALYSIS
A. The Parties' Positions
Plaintiff asserted at trial that the proper method for valuing his property is to use partial interest sales because a one-fifth share is a marketable commodity, and valuing his unit on a fractional basis is more reasonable and logical than using whole unit sales because his method *Page 3 
"compares apples to apples." Plaintiff believes that the statutory definition of RMV supports his approach.
Defendant disagrees, arguing that ORS 308.125, ORS 100.555, and this court's earlier decision in Talarico v. Deschutes Cty Assessor
(Talarico), 17 OTR-MD 37 (2001), require a valuation of the whole unit, and that "whole unit" or "individual home sales" are the proper types of sales to evaluate as comparables in estimating the value of the subject property. Plaintiff disagrees with Defendant's position, asserting that neither ORS 308.125 nor Talarico invalidate the use of one-fifth interest sales as comparables for valuation purposes.
B. Methodology
For purposes of property assessment and taxation, RMV is defined by statute, in relevant part, as follows:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
ORS 308.205(1).[2] Thus, RMV can loosely be defined as the likely selling price of a given property, on the applicable assessment date, in a transaction between equally informed and unrelated parties, neither of which is acting under undue compulsion. The assessment date for the 2008-09 tax year was January 1, 2008.[3]
 The Appraisal of Real Estate acknowledges that there are many definitions of "market value," but that "it is generally agreed that market value results from the collective value *Page 4 
judgments of market participants[,]" and that "widely accepted" concepts of any definition of market value include "willing, able, and knowledgeable buyers and sellers who act prudently as of a given date," where the terms of the sale are either "cash, terms equivalent to cash, or other precisely revealed terms." Appraisal Institute, The Appraisalof Real Estate 22-23 (13th ed 2008).
Relying largely on those concepts of RMV, and the method by which the subject property has been marketed and sold, Plaintiff believes that the most appropriate method for valuing his one-fifth interest in the condominium unit is to rely on the sale of comparable partial interests in similar condominium units. As indicated above, Defendant disagrees, arguing that various statutes and prior court decisions require the use of whole unit sales to arrive at a total RMV for a condominium unit, and the division of that value by the number of interests involved to arrive at the RMV for a given unit. The court now turns to the statutes and court decisions upon which Defendant relies.
ORS chapter 100 governs the creation, operation, taxation, and sale of condominiums. ORS 100.555 specifically governs the taxation of condominium units. That statute provides, in relevant part:
 "Each unit with its allocation of undivided interest in the common elements shall be considered a parcel of real property, whether fee simple, leasehold, easement or other interest or combination thereof, subject to separate assessment and taxation by any taxing unit in like manner as other parcels of real property."
ORS 100.555(1) (emphasis added). Defendant seizes on the reference to "each unit" as support for its reliance on the sales of whole units as opposed to partial interests.
Defendant further relies on language in ORS 308.125, stating that while that statute does not expressly state condominiums are to be valued as a whole, the intent is clear. *Page 5 
ORS 308.125(1) authorizes the assessor to assess and tax an undivided interest in real property, and provides a mechanism for owners of undivided interests in real property to pay their taxes based on their proportionate interest in the property. That statute provides:
 "An undivided interest in lands or lots, or other real property, * * * may be assessed and taxed as such. Any person desiring to pay the tax on an undivided interest in any real property may do so by paying the tax collector a sum equal to such proportion of the entire taxes charged on the entire tract as the interest paid on bears to the whole."
Defendant underscores the words "undivided interest in lands or lots, or other real property," the words "entire taxes charged," and the "entire tract," for its proposition that condominium units are to be valued as a whole. (Def's Ex E at 1.) However, the language of ORS 308.125(1) is permissive rather than mandatory, as evidenced by the repeated use of the word "may," and the voluntary nature of the taxpayer's opportunity to pay the tax. Undivided interests "may be assessed and taxed as such," and a person "desiring to pay the tax * * * may do so."Id. (Emphasis added.) The court in Talarico stated that under "ORS 308.125, an assessor may generate separate tax statements for each undivided interest [,]" observing that the "statute is an administrative convenience for the owners of the undivided interests." Talarico, 17 OTR-MD at 41. The court inTalarico stated further that "ORS 308.125(1) does not require the undivided interests to be separately valued." Id. While the court stands by that statement, the fact that undivided interests need not be separately valued does not end the court's inquiry as to the appropriate methodology for valuing Plaintiff's partial interest.
Before turning more fully to Talarico, the court believes an overview of Lewis v. Dept. of Rev. (Lewis),302 Or 289, 728 P2d 1378 (1986) is in order. In Lewis, the Oregon Supreme Court responded to the taxpayers' argument that the three "common approaches" to value must all be *Page 6 used in valuing condominiums, by noting that "[t]he department[4]
may prescribe a method of valuation [of condominiums] by rules * * *, but in the absence of a single prescribed method, the proper method is itself a matter to be resolved by evidence * * *." Id. at 292. The department at that time had not prescribed a single method applicable to the valuation of condominium units. Lewis involved the valuation of certain individual condominium units in a larger complex operated as a commercial motel. Id. at 291. In addressing the predecessor to ORS 100.555[5], which is set forth above, the court stated that "ORS 94.285[6] contemplates individual valuation as well as assessment of condominium units, but this does not necessarily determine the method of valuing the units." Id. at 294. Thus, ORS 100.555(1), as interpreted by this state's highest court, requires that each individual condominium unit be separately valued and assessed. Neither the statute nor the court's decision in Lewis prescribe a particular method for arriving at the value of a given unit.
Turning to Talarico, that case involved a challenge to the RMV of a one-fifth undivided interest in a condominium unit. Talarico,17 OTR-MD at 38. In Talarico, both parties submitted sales data for partial interests and whole unit sales. Id. at 39-40. Based on the statutory mandate of ORS 100.555(1) that "`[e]ach unit * * * shall be considered a parcel of real property * * * subject to separate assessment and taxation by any taxing unit,'" and the Supreme Court's decision in Lewis declaring that the statutory predecessor to ORS 100.555 (ORS 94.285) "`contemplates individual valuation as well as assessment of condominium units,'" the Talarico court identified the issue as "the real market value of the individual condominium unit, not the *Page 7 
value of the undivided one-fifth interests."Id. at 41, 43 (emphasis removed). Accordingly, the court essentially rejected the partial interest sales, and determined the value of the unit (not the taxpayers' one-fifth interest) based on the sales of whole units. Id. at 43-44. The outcome of that case was fact specific and does not, by itself or in combination with the other "rules" set forth above, mandate a particular approach for valuing condominium units sold as partial interests.
Two years after Talarico, this court again addressed the issue of the value of a one-fifth undivided interest in a condominium unit. InRunyan v. Deschutes County Assessor (Runyan), TC-MD No 030112B, WL 23883583 (July 30, 2003), the plaintiff presented four recent sales of one-fifth undivided interests, while the defendant county submitted whole unit sales. Specifically, the plaintiff inRunyan used partial interests sales to value her one-fifth interest, whereas the assessor presented whole unit sales in the same development, to arrive at an estimated value for that unit, and then divided its whole unit value estimate by five to establish the RMV of the plaintiff's share of the property. Runyan, TC-MD No 030112B, WL 23883583 at *1-2. The court stated that "Talarico decisively established that time share condominium units should be valued as a whole unit, and interest holders should pay an equal proportion of that valuation." Id. at *3. The court found "appealing, but not convincing," the plaintiff's argument that there were completely different markets for wholly owned units and one-fifth interests.Id. The court then added that the "[p]laintiff did not attempt to compute an RMV for a whole unit based on sales data of one-fifth undivided interests in that unit." Id. The court further stated that "[s]uch an argument may have given weight to [the p]laintiff's argument, while staying within the statutory requirement of valuing the property as a whole." Id. The court *Page 8 
denied the plaintiff's appeal in Runyan based on its conclusion that the plaintiff was "attempting to value her undivided one-fifth interest instead of the actual property." Id.
 Runyan, then, left open the door for the valuation of a condominium unit by resort to partial interest sales, where the party using such an approach takes the extra step of computing an RMV for the whole unit.
Subsequent to the court's decision in Lewis, (which noted that the department had not prescribed a particular method for the valuation of condominium units) the department promulgated an administrative rule specifically applicable to condominiums. OAR 150-308.215(1)(g), adopted by the department in 1992, provides:
 "For purposes of the assessment roll for condominiums, the land, buildings, structures and improvements are to be considered together as a single value for the real market value. Where appropriate, the land, buildings, structures and improvements are to be considered together as a single value for the assessed value."
Id. (Emphasis added.) That rule does not prescribe a specificmethod of valuation. In fact, nothing in any of the statutes, administrative rules, or relevant court decisions require anything more than that each condominium unit be separately valued and assessed. Runyan goes the farthest in stating that "timeshare condominium units should be valued as a whole unit."Runyan, TC-MD No 030112B, WL 23883583 at *3.
There is some tension, if not outright conflict, between some of the statutes and judicial opinions set forth above, the practical operation of Oregon's property tax system, and several overarching judicial principles. Or, perhaps it is a matter of interpretation of the evidence and the arguments put forth by the parties in this case and previous cases. Both taxpayers and county assessors approach the question of the valuation of a partial interest in a condominium unit by either determining the value of the partial interest and multiplying that value by the number of *Page 9 
interests involved, or by determining the value of the unit as a whole and then dividing that value by the number of interests involved. In either case, the problem that arises is that a single partial interest owner could bring an appeal and, if successful, obtain a reduction in the RMV of the entire unit, thereby reducing the value and taxes of the other partial interest holders, none of whom have brought an appeal. Some of those owners may object to the reduction; for example, another partial interest owner in that unit who was trying to sell his or her interest may feel that a higher value on the tax rolls increases the likelihood of a higher sale price. Typically, the owner of a particular property cannot appeal the value of a neighbor's property because that individual is not aggrieved in that he or she is not liable for the taxes on the neighbor's property and, as such, lacks standing. Seegenerally ORS 305.275(1) (requiring that a party appealing to the Tax Court be "aggrieved.")
The cases, statutes, and administrative rules can be reconciled if the import of those rules is that, regardless of the method chosen, the resulting value applies only to the particular partial interest appealed, rather than to all of the partial interests in the condominium unit. That approach would not conflict with Lewis (requiring individual valuation and assessment of condominium units),Talarico (holding that the court is required to value the entire condominium unit), ORS 100.555 (requiring each condominium unit to be separately assessed and taxed), OAR 150-308.215(1)-(A) (1)(d) (requiring a condominium "be assessed as a unit"), or OAR 150-308.215(1)(g)
(providing that "[f]or purposes of the assessment roll for condominiums the land, buildings, structures and improvements are to be considered together as a single value"), because the unit would be valued as a whole unit with a single value (RMV). For example, if the value under appeal was $200,000 (RMV) and the court was persuaded that the evidence showed that the RMV of the appealing taxpayer's one-fifth interest was $30,000, assuming that each unit had *Page 10 
previously been valued at the same amount ($40,000 per one-fifth interest), the taxpayer bringing the appeal would have an RMV of $30,000 (a $10,000 reduction) and the unit's RMV would be reduced by $10,000, to $190,000.
C. The Evidence
As indicated above, Plaintiff's case is based on the average sale price of six partial (one-fifth) interests of similar, nearby condominium units. (Ptf s Ex 1.) The average sale price is $21,500, with sale prices ranging from a low of $18,000 to a high of $26,000.(Id). Plaintiff did not explain the variation in the sale prices, and no obvious explanation appears to the court. Moreover, Plaintiff is not an appraiser, nor has he shown that he is qualified to appraise property. Plaintiff's method of averaging is not a typical method for arriving at the value of property. First, proper comparables must be selected based on the judgment of someone qualified to select comparables, and that qualified individual must then make adjustments to the comparables for differences between the comparable sales and the property being valued. Plaintiff further asserts that the value of his whole unit can be determined by multiplying the $21,500 average price for a one-fifth interest by five, for a total of $107,500, compared to the current RMV on the rolls for the unit of $186,350. As inRunyan, the court finds that Plaintiff's approach has some appeal. In fact, Plaintiff attempted to do what the taxpayer in Runyan
failed to do; Plaintiff attempted to extrapolate a value for the condominium unit based on the partial interest sales. Unfortunately, the court does not find Plaintiff's approach persuasive.
Plaintiff paid $22,000 for a 60 percent share of a one-fifth interest in September 2006. (Def's Ex A at 1.) That purchase price suggests that the overall value of the one-fifth interest at that time was $36,667. Plaintiff's September 2006 purchase was slightly more than a year before the applicable assessment date. The RMV on the rolls for each partial interest, as reduced by *Page 11 
BOPTA and appealed by Plaintiff, is $37,270, as of January 1, 2008.(Id.) The two numbers are practically identical, suggesting that that was how BOPTA arrived at its value. In any event, there is no evidence before the court as to market conditions between the time of Plaintiff s purchase in September 2006 and the January 1, 2008, assessment date.
Defendant valued Plaintiff's property using "whole unit or individual home sales." (Def's Ex A at 1.) Defendant presented five improved sales. (Def's Ex A at 1, 2.) Two of the sales are freestanding structures (cabins) and the other three are attached units. Defendant's five comparables sold between April 2007 and October 2007. (Id at 2.) Defendant adjusted its sales to the January 1, 2008, assessment date. The adjusted values of Defendant's comparables, on a per square foot basis, range from a low of $187.29 (comp #3) to a high of $229.90 (comp #1). (Id.) The average of the five sales was $210.28 per square foot. (Id.) Plaintiff's property, as reduced by BOPTA, is valued at $159.55 per square foot. (Id.) Defendant acknowledges that its sales are newer and larger, but the appraiser, Straughan, testified that they were the best sales available, and while his comparable #5 has a partial view and is near the community center and pool, Plaintiff's unit is closer to the golf course. Defendant asserted that while its sales suggest a total RMV for the unit in excess of that on the rolls, it is merely asking that the court sustain the BOPTA RMV of $186,350 for the unit, or $37,270 per one-fifth interest.
Frankly, the court in this case prefers Plaintiff's approach to that of Defendant because, as Plaintiff stressed during trial, the subject property was and continues to be marketed and sold on the basis of partial interests rather than as a whole unit with a single owner, and purchasers in the subject and all of Plaintiff s comparables acquire similar rights and interests. However, while the court prefers Plaintiff's method, Plaintiff nonetheless does not prevail because, as the party seeking affirmative relief, Plaintiff has the burden of proof. See ORS 305.427. Plaintiff *Page 12 
must establish his case by a "preponderance" of the evidence. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue,4 OTR 302, 312 (1971); see also Riley Hill General Contractor v. TandyCorp., 303 Or 390, 394, 737 P2d 595 (1987) ("`Preponderance' derives from the Latin word `praeponderare,' which translates to `outweigh, be of greater weight.'").
D. The Outcome
After carefully reviewing the evidence, the court is simply not persuaded by a preponderance of the evidence that a reduction in RMV is in order. Accordingly, the RMV on the rolls, as established by BOPTA, is sustained.
 IV. CONCLUSION
The court concludes that Plaintiff has failed to establish an error in the record assessment by a preponderance of the evidence and that the value established by BOPTA should be sustained. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and the BOPTA values sustained.
Dated this ___day of April 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 THIS DOCUMENT WAS SIGNED BY MAGISTRATE DAN ROBINSONON APRIL 22, 2010, AND FILED AND ENTERED THE SAME DAY.
[1] $21,500/one-fifth share x 5 shares = $107,500 total condo value.
[2] All references to the Oregon Revised Statutes (ORS) are to the 2007 edition.
[3] In Oregon, the "assessment year" is a calendar year, and the "tax year" is a 12-month period beginning on July 1 each year. ORS 308.007(1)(b), (c). The annual "assessment date" is January 1, per ORS 308.007(1)(a) and ORS 308.210, and corresponds to the tax year beginning six months later on July 1. ORS 308.007(2). Thus, for the 2008-09 tax year, the assessment date was January 1, 2008, and the tax year began on July 1, 2008, and ended 12 months later on June 30, 2009.
[4] References to the "department" are to the Oregon Department of Revenue.
[5] Formerly ORS 94.285.
[6] Former ORS 94.285(1) provided in relevant part that "[e]ach unit with its allocation of undivided interest in the common elements shall be considered a parcel of real property, whether leased or in fee simple, subject to separate assessment and taxation by any taxing unit in like manner as other parcels of real property."