IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JILL BUCKLES, )
)
         Plaintiff, ) TC-MD 150133D
)
    v. )
)
DESCHUTES COUNTY ASSESSOR, )
)
        Defendant. ) **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered

September 9, 2015. The court did not receive a statement of costs and disbursements within

14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals the real market value of property identified as Account 185491 (subject

property) for the 2014-15 tax year. A trial was held in the Oregon Tax Mediation Center on

July 21, 2015, in Salem, Oregon. Plaintiff appeared and testified on her own behalf. Todd

Straughan (Straughan) appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1

through 6 and Defendant's Exhibits A through D were received without objection.

## I. STATEMENT OF FACTS

Plaintiff appealed the order of the Deschutes County Board of Property Tax Appeals

(BOPTA) upholding the subject property's tax roll real market value. (Ptf's Compl at 2.)

Plaintiff filed her Complaint on March 25, 2015, requesting a real market value of $45,000 for

the subject property. (*Id.* at 1.)

The parties agreed that the subject property was an undivided one-fifth interest in the

condominium known as 19717 Southwest Mt. Bachelor Drive, Unit 321, Bend, Oregon (subject

condominium), located in River Ridge at the Mount Bachelor Village resort (River Ridge) in

Bend. (Ptf's Ltr at 1, July 8, 2015; Def's Ex A at 1.) The parties agreed that the subject condominium was 1,194 square feet, with 2 bedrooms, 2 bathrooms, and a carport. (Ptf's Ex 4 at 1; *see* Def's Ex A at 1.)

Plaintiff testified that she was "shocked" when she received her tax statement stating a real market value that was "three times what she had paid for the property." The BOPTA order stated that the real market value of her one-fifth interest was $77,570 and the real market value of the whole unit was $387,750 for the 2014-15 tax year. (Ptf's Compl at 2.) Plaintiff testified that she would "accept" a real market value of $74,880 for her one-fifth interest in the subject condominium, which was the same real market value assessed to two other condominiums in the River Ridge development: The "*Talarico* unit" and the "*Runyan* unit." [1] Plaintiff testified that the *Runyan* and *Talarico* units were "cookie cutter" to the subject condominium.

Plaintiff testified that she listed her one-fifth interest in the subject condominium for sale and that it had "been on the market for approximately 820 days at a list price of $59,500 and then $49,500." (*Cf.* Ptf's Ex 4 at 1.) Plaintiff testified that all the River Ridge condominiums with multiple owners had higher tax roll real market values than similar wholly-owned condominiums, except the *Talarico* and *Runyan* properties, which had adjudicated real market values. (*See also* Ptf's Ex 5 at 1.)

Plaintiff testified that her one-fifth interest in the subject condominium came "with certain restrictions," stating that one "can't get financing on a one-fifth interest." Plaintiff testified that her one-fifth interest entitled her to "10 weeks of occupancy per year." She testified that "it's divided up into fifty weeks, with two weeks maintenance time, and some of those ten

---

[1] The properties to which Plaintiff referred were the subjects of two prior cases before the Magistrate Division of the Oregon Tax Court: *Talarico v. Deschutes Cty. Assessor (Talarico),* 17 OTR-MD 37 (2001), and *Runyan v. Deschutes Co.(Runyan),* TC-MD 030112B (2004).

weeks are consecutive and some are rotating * * * so there can be a variation in the pricing in the unit depending on the appeal of the weeks that are owned." Plaintiff testified that "the expenses, the management fees and the homeowner association dues are higher for a one-fifth interest because the management, which is the resort company, requires that a unit be cleaned after each owner's use." Plaintiff testified that "the dues for a wholly-owned [unit] is about $470 a month. The dues for a one-fifth interest is about $309 per month, which is about $1,545 [for a 100 percent interest] a month." Plaintiff testified that "decisions on updating, replacing, and any improvements have to be unanimous, so control is a big issue." Plaintiff testified that she "believes all these things affect" the subject property's real market value.

Plaintiff testified that her purchase prices of five separate one-fifth interests in a neighboring unit (unit 320) totaled $224,000. (*See also* Ptf's Ltr at 2, July 8, 2015.) Plaintiff submitted as evidence an appraisal of condominium unit 320. (Ptf's Ex 4a.) Plaintiff testified that the subject condominium and unit 320 are "cookie cutter." Plaintiff testified that the appraisal report prepared for unit 320 stated a real market value of $375,000 as of April 27, 2015. (Ptf's Ex 4a at 3.)

Straughan testified that he was "a registered appraiser and a fee appraiser." Straughan testified that the subject condominium is "exactly like" unit 320, and that he did not think the "appraisal report [provided by Plaintiff] was way off the mark." Straughan testified that he "had a couple issues with the appraisal [report], mainly with the $50,000 adjustment," but that the subject condominium's tax roll real market value of "$387,750 still seems within reason." Straughan testified that "he did not know if the sale prices [for the comparable sales in the appraisal report] included personal property." He testified that the county has a difficult time obtaining data regarding the value of personal property in real property sales, and that usually

personal property has little or no value to the purchaser. Straughan testified that he did not view the *Runyan* and *Talarico* units. He testified that he "was able to go in to unit 509 * * * [and] it looked very similar" to the subject condominium. Straughan testified that he attributed the differences in real market value among the units in the River Ridge development to their proximity to the river. Straughan submitted a map with his exhibits showing the location of the river and its proximity to various units. (*See* Def's Ex B at 1.)

## II. ANALYSIS

Plaintiff is appealing the real market value of her one-fifth undivided interest in the subject condominium. ORS 308.205(1) provides the definition of real market value in the context of property valuation and assessment:[2]

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

"Real market value is the standard used throughout the ad valorem statutes, except for special assessments." *Richardson v. Clackamas Co.,* TC-MD 020869D, WL 21263620 at *2 (Mar 26, 2003). The assessment date for the 2014-15 tax year was January 1, 2014. *See* ORS 308.007; ORS 308.210. Real market value "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). The three approaches to real market value that must be considered are: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. OAR 150-308.205-(A)(2)(a).[3] Even though all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

/ / /

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

[3] Oregon Administrative Rule (OAR)

In all proceedings before the tax court, the burden of proof falls on the party seeking affirmative relief. ORS 305.427. Plaintiff is the party seeking affirmative relief and must prove her case by " 'a preponderance of the evidence,' which means 'the greater weight of evidence, the more convincing evidence.' " *Yarbrough v. Dept. of Rev.*, 21 OTR 40, 44 (2012) (quoting *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971)). If the evidence presented is "inconclusive or unpersuasive," Plaintiff "will have failed to meet [her] burden of proof." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

Plaintiff proposed a variety of methods to determine the subject property's real market value.

A.      *Valuation of Undivided One-Fifth Interest*

ORS 308.125(1) addresses the assessment of an undivided interest and provides, in pertinent part:

> "An undivided interest in * * * real property * * * may be assessed and taxed as such. Any person desiring to pay the tax on an undivided interest in any real property may do so by paying the tax collector a sum equal to such *proportion of the entire taxes charged on the entire tract* as the interest paid on bears to the whole."

(Emphasis added.) *Black's Law Dictionary* defines "tract" as "[a] specified parcel of land." *Black's Law Dictionary* 1529 (8th ed 2004). In this case, the "entire tract" is the subject condominium. The subject property, which has its own property tax account, is Plaintiff's one-fifth undivided interest in the subject condominium.

In *Talarico v. Deschutes County Assessor* (*Talarico*), 17 OTR-MD 37 (2001), the property owners challenged the real market value of their one-fifth undivided interest. This court held that allowing separate valuation of each one-fifth undivided interest would be inconsistent with ORS 308.125(1), which allows for payment of tax on an undivided interest by payment of a

proportion of the tax on the whole. *Talarico*, 17 OTR-MD at 41-42. The court explained that the separate tax statements generated under this statute "are merely an administrative convenience. The condominium unit is what is being valued, not the individual undivided interests." *Talarico*, 17 OTR-MD at 44.

In *Runyan v. Deschutes Co.* (*Runyan*), TC-MD 03112B, WL 23883583 (2004), a property owner challenged the real market value of her undivided one-fifth interest, arguing that the board wrongfully failed to consider the sales of similar undivided interests in making its determination of real market value. The court reasoned that, because undivided interests were "essentially identical," separate valuation of them "would run contrary to the statutory provision for proportional payment, as well as the constitutional requirement of uniformity." *Runyan*, 2003 WL 23883583 at *3; Or Const, Art I, § 32 ("all taxation must be uniform within the same class of subjects").

In sum, ORS 308.125, Article IX, section 1, of the Oregon Constitution, and case law state that the value of the subject property must be determined as a fraction of the value of the whole condominium.

B.     *Aggregate Valuation of Undivided Interests*

Plaintiff argues that the court should determine the real market value of the whole unit by adding the sale price of each of the one-fifth interests. In determining the value of a condominium, ORS 100.555(1) states, in pertinent part, that "[e]ach unit * * * shall be considered a parcel of real property, whether fee simple, leasehold, easement or other interest or combination thereof, subject to separate assessment and taxation * * * in like manner as other parcels of real property." Condominium units are to be separately assessed. *Lewis v. Dept. of Rev.,* 10 OTR 128, 130 (1985), *aff'd*, 302 Or 289, 728 P2d 1378 (1986).

ORS 100.555(4) gives the Oregon Department of Revenue its rulemaking authority with regard to the taxation of condominiums:

> "The Department of Revenue shall have the authority to make rules and regulations prescribing methods best calculated to secure uniformity according to law in the appraisal and assessment of units constituting part of a property submitted to the provisions of this chapter."

OAR 150-309.110(1)-(D)(2)(a) states that in determining the real market value of property assessed as an undivided interest a board of property tax appeals must "[d]etermine the real market value of the whole property as if it were under single ownership." OAR 150-308.205-(A)(2)(c), setting forth the sales comparison approach, provides that "only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used."

In *Runyan*, the court stated that if taxpayer had attempted to compute a real market value for the whole unit based on sales data of one-fifth interests, "[s]uch an argument may have given weight to [taxpayer's] argument." *Runyan*, 2003 WL 23883583 at *3. In *Duhring v. Deschutes County Assessor* (*Duhring*), TC-MD 090346C, WL 1620963 at *6 (2010), the taxpayer did exactly that, computing the average of the sale prices of other undivided interests to arrive at a real market value for the whole. The court found that that approach came closer to the statutory requirement because it valued the unit as a whole, but that the taxpayer's application of it was unpersuasive because the taxpayer did not make adjustments for differences between the subject property and the comparable properties. *Duhring*, 2010 WL 1620963 at *6-*7.

Plaintiff argues that the subject condominium's real market value should be $224,000, the total of her purchase prices for the five undivided interests of unit 320. *See* Ptf's Ltr at 2, July 8, 2015. However, adding together the sale prices of all five one-fifth interests does not account for the change in restrictions on use, occupancy and control. In *Ward v. Department of Revenue* (*Ward*), 293 Or 506, 510, 650 P2d 923 (1982), the Oregon Supreme Court stated:

"In real estate, the value of the whole is relevant to the value of a part, but it is not necessarily determinative. The market value of a large parcel does not necessarily equal the sum of the market value of the parts into which the parcel may be divided or subdivided because smaller parcels may be more readily marketable."

Here, as in *Ward*, the sum of the parts is not equal to the real market value of the whole. The real market value of an undivided interest is less than the same proportion of a wholly owned property for the reasons Plaintiff discussed in her testimony: lack of financing, lack of control, and limited occupancy. The sale prices of undivided interests with restrictions are not valid comparable sales to determine the real market value of a 100-percent-owned condominium unit.

Based on Plaintiff's testimony, the court finds that Plaintiff's proposed valuation method is flawed. Statutes, administrative law, and case law require the unit to be valued as a whole and a 100-percent ownership interest in a River Ridge condominium unit does not have the same restrictions on occupancy, control, and use as an undivided interest.

C.    *Plaintiff's Appraisal Report*

"ORS 305.427 requires that a taxpayer who is dissatisfied with an action of a county or other taxing agency must establish by competent evidence what the appropriate value of the property was as of the assessment date in question." *Woods v. Dept. of Rev*, 16 OTR 56, 59 (2002). Plaintiff alleged that the subject property's real market value is $375,000, the same real market value stated in an appraisal report prepared for the identical unit 320.

The court finds two problems with the appraisal report Plaintiff submitted as evidence. First, the appraisal report was prepared as of April 27, 2015, fifteen months after the subject property's assessment date of January 1, 2014. Second, the appraiser who completed the appraisal report did not testify. That appraiser was not available for cross-examination by Defendant, and could neither elaborate on the nature and extent of his work, nor give his opinion

/ / /

on the subject property's real market value. The court gives little weight to Plaintiff's appraisal report.

D.    *Uniformity*

Plaintiff argues that the real market value of the subject property is inconsistent with the uniformity requirements of Oregon's Constitution. Oregon's Constitution requires that "all taxation * * * be uniform on the same class of subjects within the territorial limits of the authority levying the tax." Or Const, Art I, § 32. ORS 307.030 provides that "[a]ll real property within this state * * * shall be subject to assessment and taxation in equal and ratable proportion."

The subject condominium and the condominiums at issue in the *Runyan* and *Talarico* cases are all within the same class of properties; they are residential condominiums within the River Ridge complex. Straughan did not attribute the differences in real market value between the *Talarico* unit, the *Runyan* unit, and the subject condominium to their belonging to different classes of property.

Plaintiff testified that the units at issue in *Runyan* and *Talarico* were "cookie cutter" to the subject condominium. Straughan did not dispute that the condominium units were similar in classification based on characteristics. In *Talarico*, the court stated: "The subject property is a two bedroom condominium located at Mount Bachelor Village Resort in Bend. * * * There is one floor plan for the two bedroom units * * *." *Talarico*, 17 OTR at 39. In *Runyan*, the court found that "[t]he subject property is a two-bedroom condominium in a development called River Ridge. * * * Aside from the number of bedrooms, all of the units [in River Ridge] are essentially identical in design." *Runyan*, 2003 WL 23883583 at *1. The court once again concludes that all the two-bedroom units in the River Ridge development were identical with regard to structure

and design. All the two-bedroom units had identical floor plans, and they all had the same square footage. Straughan could not have used the structure, design, or square footage as a basis for assigning the subject property a higher real market value than the *Talarico* and *Runyan* properties.

The court considers whether Defendant used personal property as a basis for determining differences in real market value among the River Ridge properties. Straughan testified that he did not know if the sale prices for the comparable sales in Plaintiff's appraisal report included personal property. Straughan testified that the county has a difficult time obtaining data regarding the value of personal property in sales of real property, and that usually personal property has little or no value to the purchaser. Differences in the personal property between the units could not have been the basis for Straughan finding that the subject condominium had a higher real market value than the other two units because the county did not take personal property into consideration when it calculated the real market value for the units.

Straughan testified that he attributes the differences in value between units in the River Ridge development to their proximity to the river. The subject condominium was unit 321, the *Runyan* unit was 328, and the *Talarico* unit was 325. *Talarico*, 17 OTR at 39; *see Runyan*, 2003 WL 23883583 at *1. (*See* Ptf's Ex 5 at 16.) All the units were in the same 300 block and had similar proximity to the river.[4] (*See* Def's Ex B.) Straughan's attribution of real market value differences to river distance is unpersuasive.

The court finds that there are no qualitative differences between the *Talarico* and *Runyan* units and the subject condominium, and that the subject condominium's real market value is the same as that of the *Talarico* and *Runyan* units. The court concludes that Plaintiff has met her

---

[4] Defendant's Exhibit B shows the numbering system for the units in the River Ridge development and the proximity of the units to each other and the river.

burden of showing that the subject condominium was not assessed uniformly with the *Talarico* and *Runyan* units. The court finds that the subject condominium had a 2014-15 real market value of $374,400. The 2014-15 real market value of Plaintiff's one-fifth interest in the subject condominium was $74,880, the same as the 2014-15 roll real market values of the *Talarico* and *Runyan* units. (*See* Ptf's Ex 5 at 13, 16.)

### III. CONCLUSION

After careful consideration of the evidence and testimony, the court concludes that there is no authority to separately value Plaintiff's one-fifth interest. The subject property's real market value must be determined for the entire property and then allocated based on ownership interest. The court finds that there are no qualitative differences between the subject property and two other River Ridge units that would result in the subject property having a higher real market value than those properties. Now, therefore,

IT IS THE DECISION OF THIS COURT that the real market value of the condominium located in Deschutes County and known as 19717 Southwest Mt. Bachelor Drive, Unit 321, Bend, Oregon, is $374,400 for the 2014-15 tax year.

IT IS FURTHER DECIDED that the real market value of property identified as Account 185491 was $74,880 for tax year 2014-15.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Defendant shall correct the assessment and tax rolls to reflect the above values.  Any refund due shall be paid promptly with statutory interest.

Dated this ____ day of September, 2015.

 

 

_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on September 28, 2015.*