Daniel M. SMITH,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*
*and*

MARION COUNTY ASSESSOR,
*Intervenor-Defendant.*

(TC 4588)

Trial was held June 2 and 3, 2003, in the courtroom of the Oregon Tax Court, Salem.

Michael G. Gunn, Gunn & Cain, LLP, Newberg, argued the cause for Plaintiff (taxpayer).

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Scott A. Norris, Marion County Assistant County Counsel, Salem, argued the cause for Intervenor-Defendant.

Decision for Plaintiff rendered March 17, 2004.

**HENRY C. BREITHAUPT, Judge.**

### I. INTRODUCTION

This action was tried in the court after denial of a motion for summary judgment filed by Defendant Department of Revenue (the department). The proceedings in this case focused primarily on the substantive propriety of the actions of the Marion County Assessor (the county) in disqualifying certain land from special farm use assessment. However, although Plaintiff (taxpayer) did not raise the question of the procedural propriety of the actions of the county specifically in his pleadings, substantial testimony and several exhibits relevant to procedural issues were received without objection at the trial. The county was afforded an opportunity to review its files for evidence on those procedural issues.

Because the court is of the opinion that there is a fatal flaw in the procedure followed by the county in this matter, this opinion will focus on facts and analysis related to that procedure.

## II. FACTS

The trial established the following facts:

For several years prior to 2001 the land in question had qualified for special assessment as farmland producing grass crops. The land had been platted in 1913 and therefore was qualified as nonexclusive farm use land. During calendar year 2000, taxpayer leased the land to a tenant farmer whose crop failed.

Beginning in calendar year 2000, taxpayer took steps to improve the land and to determine if it could support septic features consistent with residential development. Taxpayer constructed a road across the property, which could serve as access to residential lots. The road could also serve as access to nursery plantings, a use to which taxpayer testified he was converting the land. Taxpayer also put up signs advertising portions of the land for sale as residential lots. Notwithstanding the development efforts of taxpayer, in late June 2001 a hay crop was harvested off the land not covered by the road.

Apparently because he had heard from someone in the office that some development was proceeding on the land, Richard K. Kreitzer (Kreitzer), the county assessment official assigned to this account, visited the property. There he observed that septic test holes had been dug, the road installed, and underground electric vaults constructed. At some point Kreitzer also became aware that no crop income had been produced from the land in calendar year 2000. Kreitzer made one visit to the property on or about May 1, 2001, and concluded it was no longer in farm use, even though what became a hay crop was observable. Kreitzer described this crop as "unkept."

On a parallel path, other county personnel were verifying the farm income produced from the land. An annual letter inquiring about farm income was sent to taxpayer in early 2001 and it was forwarded to the tenant farmer. One other letter inquiring about farm income for prior years was sent to taxpayer by the county. The county apparently did not take the position that the land had failed the income test for farm use assessment at that time and did not send out the

types of notices required by governing rules to be sent when income qualification is at issue.[1] At trial, Kreitzer testified that the county did not disqualify the property because of failure to produce the requisite amount of farm income.[2]

Kreitzer testified he had no personal knowledge of the use of the property for farm purposes in calendar year 2000. He drew inferences from information he gathered in early 2001 about the intent of taxpayer. He did not know of the failed crop of the tenant in the year 2000.[3] Kreitzer testified he attempted to contact taxpayer about disqualification, but was not successful. Kreitzer's office did send taxpayer a letter, dated April 19, 2001, stating that the disqualification process was being initiated because "[p]roperty is not being farmed and is being included in the subdivision Academy additions." By April 24, 2001, taxpayer had responded in writing that disqualification was unwarranted because he had planted grass and clover for use as silage and hay. No evidence was presented as to any attempt by the county to follow up on this information, even though the department's rules require counties to take efforts to understand all facts in connection with qualification and disqualification of property. *Cf.* OAR 150-308A.059(2)(b).[4]

Kreitzer's visit to the property occurred on or about May 1, 2001. The next communication by the county to taxpayer appears from the record to be a letter of June 13, 2001, signed on behalf of Kreitzer and informing taxpayer that the land in question had been disqualified, "by request of the owner." This letter also informed taxpayer of an estimated market value for the property and an additional tax due.

---

[1] The court says "apparently" because the county produced no such notices initially or after being afforded the opportunity to review its files on the disqualification process.

[2] On April 25, 2001, the county inquired as to income history for the property for 1998, 1999, and 2000. It is not clear from the record what, if any, response was received. Presumably the income history was not an issue since the county did not follow the strict procedural process in OAR 150-308A.071 for income disqualification.

[3] The focus of testimony and other evidence at the trial was January 1, 2000. The pleadings of taxpayer assert that the land was disqualified for the years 1996-97 through 2001-02. The notification of disqualification in the record contains no indication of the tax years to which it relates.

[4] All references to the Oregon Administrative Rules (OAR) are to 2001.

Finally, the letter informed taxpayer of rights to appeal the disqualification to the Magistrate Division of this court.

Taxpayer filed a timely appeal in this court of the county's disqualification action. The magistrate assigned to the case decided the matter on the basis of substantive qualification for farm use special assessment and upheld the disqualification action of the county.

## III. ISSUE

Was taxpayer's land properly disqualified from the benefits of farm use special assessment?

## IV. ANALYSIS

■■ Oregon, like all other states, has adopted special assessment rules for farmland. The statutory scheme now found in ORS chapter 308A[5] contains detailed procedural as well as substantive requirements. The department has promulgated a series of rules dealing with substantive and procedural issues arising under ORS chapter 308A. Taxpayers who might otherwise have benefitted from ORS chapter 308A have been denied those benefits in cases where strict compliance with the statute has not occurred. *See Marriott v. Dept. of Rev.*, 4 OTR 508 (1971).

A major demarcation in ORS chapter 308A is between land that is "[e]xclusive farm use zone farmland" and land that is "[n]onexclusive farm use zone farmland." ORS 308A.053(2) and (4); *compare* ORS 308A.113 and ORS 308A.116. As mentioned above, the land in question here is nonexclusive farm use zone farmland (Non-EFU land).

■ Non-EFU land can be disqualified from special assessment if income requirements under ORS 308A.071 are not met or if the county assessor determines that the land is no longer in farm use. ORS 308A.116(1)(c). The basis for disqualification on which a county proceeds is important. Disqualification because of failure to meet income requirements must follow a detailed procedure. *See* OAR 150-308A.071. However, a different set of procedural requirements applies

---

[5] All references to the Oregon Revised Statutes (ORS) are to 2001.

to determinations that land is no longer in farm use. *See* OAR 150-308A.116.

■■    Once a disqualification decision has been reached, the specific statute on disqualification procedures, ORS 308A.718, requires the notification of disqualification to "state the reason for disqualification." ORS 308A.718(3). The importance of requiring the statement of the basis for the disqualification becomes apparent later in the statute. In cases where disqualification is *by request of the property owner* or by reason of acquisition of the property by a government or tax-exempt entity, the notice need not contain a written explanation summarizing a series of points. ORS 308A.718(6). However, disqualification by reason of failure to keep property in farm use must be followed by written notification providing the reason for disqualification and a written statement about the items specified in ORS 308A.718(5)(a). One of these items is a written explanation of the administrative acts needed to change the type of special assessment. This disclosure relates to actions required of taxpayer that must be taken within specific time frames in order for additional taxes to be deferred. *See* ORS 308A.718(5)(c); ORS 308A.724; OAR 150-308A.718(2)(d).

In this case the record reveals that the county at one time in early 2001 may have had concerns about the income history of this property and sent a notice of this concern to taxpayer. The county did not, however, rely on income disqualification at trial nor, according to Kreitzer, in its initial decision to disqualify. The county sent a notice of potential disqualification on April 19, 2001, based on lack of farm use and inclusion of the property in a subdivision. The county official did not visit the property until after sending the notice and the record does not indicate that the county made a reasonable effort to contact the owner[6] or to request information on the recent history of the use of the property. Those are both mandatory steps under governing rules. *See* OAR 150-308A.116(1)(a).

_____

[6] OAR 150-308A.116(1)(b) requires the assessor to retain copies of contact letter(s) or a record of other means of contact as well as information from the person contacted. In this case the only evidence as to attempts by the county to contact taxpayer was Kreitzer's testimony that he made one attempt, which was unsuccessful.

■ Most importantly, the county did not comply with ORS 308A.718(3) in providing *the reason* for disqualification. Its notice stated that taxpayer had requested disqualification. That was not correct. Further, and perhaps related to its misstatement of the reason for disqualification, the county failed to provide all of the written explanations required by ORS 308A.718.[7] Those written explanatory summaries are required by statute and, in the court's opinion, the failure to provide them renders the disqualification invalid. *See Preble v. Dept. of Rev.*, 331 Or 320, 14 P3d 613 (2000).

■ In this case the county made a determination that the land was no longer in farm use, and disqualified the land effective January 1, 2001. Under ORS 308A.116(6) that act of disqualification is permissible only when the notice of disqualification required under ORS 308A.718 is mailed prior to August 15 of that year. A notice meeting the requirements of ORS 308A.718 was not mailed within the statutory time limit, therefore the act of disqualification is invalid.

## V. CONCLUSION

For the foregoing reasons, the action of the county in disqualifying the property in question here is declared invalid.

---

[7] The notification document contains some of the disclosures required by ORS 308A.718(5) and OAR 150-308A.718 but omits others. Absent are those relating to ORS 308A.724 and the discussion of potential penalties.