IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| CHAD E. PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 160344R |
| | ) | |
| v. | ) | |
| | ) | |
| DESCHUTES COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiff appealed the disqualification of property identified as Account 154887 (subject

property) from nonexclusive farm use zone farmland (non-EFU) special assessment for the

2016-17 tax year. A telephonic trial was held on April 6, 2017. Kyle Schmid, of Schmid

Malone Buchanan LLC, appeared on behalf of Plaintiff. Chad Phillips (Phillips), Eric Sexton

(Sexton), and Monte Clouston (Clouston) testified on behalf of Plaintiff. Sexton appeared and

testified on behalf of Defendant. Plaintiff's Exhibits 1 to 8 were admitted into evidence without

objection. Defendant's Exhibits A through E were admitted into evidence, without objection,

except for any hearsay statements of Aviv Hadar which were not admitted.

## I. STATEMENT OF FACTS

The subject property is 7.50 acres, zoned Multiple Use Agriculture, and located in the

Winston Ranch neighborhood in Deschutes County. (Ptf's Ex 1.) Prior to the 2016-17 tax year,

6.50 acres of the subject property was specially assessed as non-EFU farm deferral.

/ / /

/ / /

---

[1] This Final Decision incorporates the court's Decision, entered January 5, 2018, with one change. The word "filed" has been corrected to "field" on page 5. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

Sexton testified that he is a residential property appraiser for Defendant. Sexton testified that in March or April 2016, he did an inspection of the subject property and did not observe obvious signs of farm use. He testified that he did not make any notes of the inspection.

On March 31, 2016, Defendant mailed Plaintiff a letter and questionnaire requesting information about the subject property's farm use. (Def's Ex B at 2.) Sexton testified that the letter was addressed to the last address of taxpayer known to the Assessor: 309 Wisconsin Ave., Whitefish, MT 59937 (Wisconsin Ave). The letter states "In the questionnaire I am asking you for your gross income information from your farm use for 2013 and 2014." *Id*. The letter also states:

> "To supplement the questionnaire, documentation such as copies of Schedule F forms, sale receipts, lease agreements, or any income information **must** be included to support the gross income claims. * * * **If you are submitting a Schedule F form as supporting documentation that contains reported gross income, please clarify how that income was generated**."

(emphasis in original.)

The questionnaire included columns for the 2014 and 2015 tax years only. (Def's Ex B at 3-4) Sexton testified that the letter had the wrong years but the questionnaire was correct. The letter stated the deadline for response was May 18, 2016. (Def's Ex B at 2.) On May 2, 2016, Defendant sent a letter to Plaintiff explaining that the County had not received the completed income questionnaire and warning that "[f]ailure to return the questionnaire may result in disqualification from the Non-Exclusive Farm Use Deferral program under ORS 308A.116(1)(c)." (Def's Ex B at 5.) The letter demanded a response by May 18, 2016.

Sexton testified that the March 31, 2016, and May 2, 2016, letters were not in strict compliance with the time limits contained in OAR 150-308-1050(4)(a), but, Defendant thought that the amount of time given for a response from Plaintiff was reasonable under the

circumstances. Sexton testified that neither of the letters was returned as undeliverable by the U.S. Postal Service and that Defendant did not receive a response from Plaintiff by May 27, 2017.

On May 27, 2016, Defendant mailed Plaintiff a "show cause" letter stating its intention to disqualify the subject property from Non-Farm EFU if the requested information was not provided within 30 days. (Def's Ex B at 6.) The letter states "notice is given that the above-mentioned property has failed to provide the requested information: -Proof the land was and has been used for farm use [and] -Sufficient gross income information for 3 out of 5 years." The May 27, 2016, letter was returned to Defendant by the U.S. Postal Service with a yellow sticker stating: "RETURN TO SENDER" and included a new address of 165 Vista Dr., Whitefish, MT 59937-7832 (Vista address). (Def's Ex B at 8.)

On June 28, 2016, Defendant mailed Plaintiff letters to the Wisconsin Ave, Vista address, and to the subject property stating the property has been disqualified from non-farm EFU for the following reason:

> "Currently farmland is lying idle or is no longer in a qualifying use and has been disqualified from the following program:
> - Non-Exclusive Farm Use, ORS 308A.116(1)(c); Removal of the special assessment by the assessor upon the discovery that the land is no longer in farm use for failure to meet the income requirements under ORS 308A.071 or is no longer in farm use."

(Def's Ex B at 9.)

The June 28, 2016 letter provides additional tax information including: summaries of ORS 308A.706(1)(d) and ORS 308A.724; the dollar amount of potential additional taxes due to the disqualification; and appeal rights to the Oregon Tax Court. (Def's Ex B at 9 -11.) The letter mailed to the subject property was returned by the U.S. Postal Service as undeliverable and "unable to forward." (Def's Ex B at 15.)

FINAL DECISION  TC-MD 160344R                                                              3

On August 26, 2016, Plaintiff sent an email to CPA Marija Berney asking her to "send Eric Sexton of Deschutes County the past Schedule F's of the property." (Def's Ex C at 3.) On August 29, 2016, Ms. Berney sent an email to Sexton including copies of Plaintiff's Schedule F for the 2009 through 2015 tax years. (Def's Ex C at 5-11.) Plaintiff's Schedule F for the 2009 through 2015 tax years only reported income under the category of "other income." (*Id.*) On August 30, 2016, Defendant sent an email to Ms. Berney asking for clarification of the "other income." (Def's Ex C at 12) Ms. Berney replied the next day "To my knowledge this is income from allowing others to use land as pasture for their grazing animals."

On September 2, 2016, Defendant sent an email to Plaintiff asking for information on the farm use of the property in 2016. (Def's Ex C at 20.) Plaintiff replied for 2016 it was pasturing "horses eating the Hay/grass." (*Id.*) The reply also states for 2012 through 2015 it was pasturing sheep, 2011 and 2012 it was horses and 2009 and 2010 it was hay production. (*Id.*) On August 31, 2016, Plaintiff signed the completed questionnaire and reported Hay income in 2014 in the amount of $3,900 and for 2015 income in the amount of $4,160. (Def's Ex C at 23.) The form also states that a tenant, Aviv Hadar, was using the property for sheep in 2014 and 2015. (*Id.*)

On August 31, 2016, Sexton performed a site inspection of the subject property and documented his observations on a "Farm Use Review" form. (Def's Ex C at 13.) Sexton noted on the form "No farm use observed. Irrigated pasture, green, numerous weed growing. Did not appear to have been recently grazed or cut for orchard grass/hay." (*Id.*) He noted no observations of livestock or animals and the only crop seen was grass. (*Id.*) Sexton took pictures of the property showing an empty field. (*Id.* at 14-16.) On September 2, 2016, Defendant mailed Plaintiff a letter which reaffirmed the June 28, 2016, disqualification and included in the letter was a copy of the official notice of the disqualification. (Def's Ex C at 26.)

On December 7, 2016, Plaintiff sent an email to Defendant stating the income from subject property was for leasing the field for either raising sheep or horses and prior to 2014 was for hay production. (Def's Ex C at 36.)

Plaintiff presented a letter from Great Northern Heights Homeowners Association stating that persons living in Plaintiff's housing development, including Plaintiff specifically, experienced trouble with their mail in spring and summer 2016 due to the developer's error in not providing all of the mailboxes necessary. (Ptf's Ex 8.)

Sexton testified that to meet the income requirement, based on the size of the subject property, Plaintiff would need to have $650 in gross income from operation of the farm, and if leased, an additional $152.50 in rental income. He testified that in 2013 through 2015 the gross income from the lease was in excess of $650 but not the gross proceeds from the farm. He testified that he reviewed Plaintiff's Schedule F for five years and did not see evidence of gross income from farming operations – only from leasing the property.

Phillips testified that the only reason for the appeal was because he was told the disqualification was due to his failure to respond to the Defendant's questionnaire. He testified that he understood Defendant was not challenging his farm use. In 2012, Phillips leased his property to Hadar with the understanding that he would raise sheep and meet the farm use requirement. Phillips saw Hadar raising sheep, put 7 acres of cross fencing, and added a corral and sheep station. He testified that during one period Hadar's entire herd was taken off the property for several weeks and a new herd was put on the pasture. He also observed that the sheep had been sheered on at least one occasion. Phillips testified that "no one invests that kind of money without intending to farm." Since that time, Phillips relationship with Hadar has been strained and they are currently in litigation over damages Hadar allegedly did to the subject

property. Phillips testified that Hadar was not a credible person and he has breached every agreement between the parties.

Clouston testified he is a general contractor and lives across the street from the subject property. Clouston testified that he was aware that Hadar was leasing the property from 2013 to 2015. At some point, Clouston was contacted by the FBI regarding Hadar's activities. Clouston stated he saw sheep on the subject property and remembers the sheep being sheered on at least one occasion.

II. ANALYSIS

The issue in this case is whether Defendant properly disqualified the subject property from non-EFU special assessment for the 2016-17 tax year. Plaintiff argues that Defendant waived its challenge to the farm use of the property and should be estopped from asserting that Plaintiff failed to meet income or use requirements. Plaintiff argues in the alternative that the disqualification should be overturned because Defendant failed to follow the notice requirement in OAR 150-308-1050(4)(a).

A.      *Equitable Estoppel*

The court first considers whether Defendant waived its right to argue that Plaintiff failed to meet income or use requirements. Oregon Courts have recognized that the theory of equitable estoppel applies to government agencies. *Johnson v. Tax Commission*, 248 Or 460, 435 P2d 302 (1967) (applying equitable estoppel to tax collector); *Pilgrim Turkey Packers v. Dept. of Rev.*, 261 Or 305, 493 P2d 1372 (1972) (holding that county assessor was precluded from denying exemption where assessor provided misleading information); *Employment Div. v. Western Graphics Corp.*, 76 Or App 608, 710 P2d 788 (1985) (Employment Division estopped from assessing tax after providing incorrect information to taxpayer). A Plaintiff must prove three

elements "(1) misleading conduct on the part of the [defendant]; (2) taxpayer's good faith, reasonable reliance on that conduct; and (3) injury to taxpayer." *Webb v. Dept. of Rev.*, 18 OTR 381, 383 (2005).

As to the first element, Plaintiff must submit sufficient evidence to show "proof positive" that Defendant misled him *i.e.* misleading written information or misleading conduct. *Id*. at 384. Plaintiff argues that Defendant's disqualification notice did not identify income as a basis for disqualification from Non-EFU deferral and Defendant should be precluded from presenting evidence on that issue. That contention is not persuasive because the Notice states "the land is no longer in farm use **for failure to meet the income requirements**." (Emphasis added.) Defendant's disqualification letter contained sufficient information to place Plaintiff on notice for the issues on appeal.

Plaintiff also argues that Defendant's emails misled him as to the issues he needed to present at trial. Plaintiff cites to a portion of a letter from Defendant dated February 27, 2017, which states "Your property was disqualified from farm deferral for the 2016 tax year for failure to respond to our audit." (Ptf's Ex 6 at 1.) The court can understand how that statement could be confusing to Plaintiff, however, the email goes on to state "Our office does not contest that you leased your land for the raising of sheep, but we are asking the Magistrate if the information you submitted after the disqualification meets the requirements of the farm deferral program, warranting it to be reinstated." *Id*. It appears to the court that "information you submitted" refers to multiple years of Schedule F and information about the tenant's alleged farm use of the property. The court does not find Defendant's email constitutes "proof positive" that it misled Plaintiff regarding the issues he was required to prove at trial.

/ / /

As to the second element, the court does not find that Plaintiff reasonably relied on Defendant's statements. After the disqualification notice, Plaintiff and Defendant engaged in a series of communications regarding income from the subject property. Defendant repeatedly requested specific information about the source of "farm income." On August 30, 2016, Plaintiff's CPA acknowledged the income from the farm was from "allowing others to use land as pasture for their grazing animals." (Def Ex C at 12.) At trial, Plaintiff's Schedule F income information was presented along with information about farm use of the subject property. Plaintiff has not demonstrated reasonable reliance of a false assertion by Defendant which caused harm. Therefore, the court will not apply Plaintiff's estoppel theory to the analysis of this case.

B.      *Non-EFU Special Assessment in General*

To promote agricultural production and stewardship of farmland, the Legislative Assembly established a program of special assessment for land that qualifies as nonexclusive farm use zone farmland (non-EFU). Non-EFU farmland is "land that is not within an exclusive farm use zone but that qualified for farm use special assessment under ORS 308A.068." ORS 308A.053(4).[2] Non-EFU property may be disqualified from special assessment for four reasons: a) by the taxpayer's request; b) sale or transfer to a ownership exempt from ad valorem property tax; c) when "the land is no longer in farm use for failure to meet the income requirements under ORS 308A.071 or is no longer in farm use"; or d) recording a subdivision plat under ORS chapter 92. ORS 308A.116(1)(a-d). Of these potentially disqualifying events only ORS 308A.116(1)(c) is in issue.

/ / /

_____

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

C.      *Notice Requirement for Disqualification from Non-EFU Special Assessment*

When a county disqualifies a non-EFU property from special assessment it must send a notice within 30 days and "state the reason for the disqualification." ORS 308A.718(3). In addition, unless the disqualification is due to a taxpayer's request, the notice must include "a written explanation summarizing: (A) ORS 308A.706(1)(d) (relating to change in special assessment); (B) ORS 308A.727 (relating to change in use to open space use special assessment for certain golf courses); (C) The administrative act necessary under ORS 308A.724 to change the property to another classification described in this paragraph; and (D) The imposition of any penalties that would result from the disqualification if no requalification or reclassification is made under one of the other special assessment laws listed in this paragraph." ORS 308A.718(5)(a). This court has held that failure to give proper notice within the statutory time limit can invalidate a disqualification. *Smith v. Dept. of Rev.*, 17 OTR 357 (2004).

As discussed in *Smith*, "the basis for disqualification on which a county proceeds is important." *Id*. at 361. A disqualification under ORS 308A.071, for failure to meet income requirements, must follow the procedural requirements in OAR 150-308-1050 (renumbered from OAR 150-308A.071) while a disqualification under ORS 308A.116, for no farm use, must follow OAR 150-308-1110 (renumbered from OAR 150-308A.116). *Id*. at 361-62.

1.      *Procedure under ORS 308A.071 and OAR 150-308-1050*

ORS 308A.071 establishes the gross income requirements for non-EFU property. Plaintiff must show that in three out of five calendar years before the assessment date the property was part of a farm unit that produced at least $650 from farm uses. ORS 308A.071(2)(a)(A). Defendant asserts that the gross income requirement should be an additional $162.50 because, in their view, the property was leased and thus "not all under the same

ownership" under ORS 308A.071(c). The court disagrees because "ownership" for purposes of that section is specifically defined in ORS 308A.071(7)(c) by to reference ORS 308A.077(2)(b)(A),(B), (D), or (E) and none of those sections defines a tenant as an owner.[3]

The Department of Revenue created administrative rules for counties to use in assessing whether a farm meets the income requirement. Under the rules, if on March 1, the assessor lacks information to determine the qualification for a property it must send notice to the owner, at the last known address of record, with a questionnaire. OAR 150-308-1050(4). The property owner must provide the income information by April 15. OAR 150-308-1050(4)(a). If the information is not provided or is insufficient, the assessor is required to send a notice of intent to disqualify the property and a statement giving the taxpayer 30 days to show cause why the property should not be disqualified. OAR 150-308-1050(4)(d)(A), (B). Failure by the taxpayer to provide the income information to the county assessor "constitutes grounds for disqualification under [ORS] 308A.116(1)(c)." OAR 150-308-1050(3). However, if the county has not provided a taxpayer with the initial notice on or before March 1 the property owner has "good and sufficient cause for the owner's failure to provide timely income information." OAR 150-308-1050(4)(f).

Plaintiff argues that the notice of disqualification is invalid because Defendant's letter asking for income information was mailed after March 1, 2016. Defendant does not dispute that its letter and questionnaire were late and not in compliance with OAR 150-308-1050(4). Rather, Defendant argues that subsection (4)(f)(A) provides for relief from a disqualification for failure to timely provide the financial information if the county fails to send a timely notice. To the extent that Defendant disqualified Plaintiff for failing to provide timely financial income, that reason would be excused by OAR 150-308-1050(4)(f). However, Defendant's notice of

---

[3] A "tenant in common" is a legal term of art used to connote a specific way of holding property pursuant to a recorded deed or other instrument. *See e.g. Talarico v. Deschutes County Assessor*, 17 OTR-MD 37, 41 n 4 (2001).

disqualification does not state the basis was for failing to provide timely information – it quotes the statutory language of ORS 308A.116(1)(c), "discovery that the land is no longer in farm use for failure to meet the income requirements under ORS 308A.071 or is no longer in farm use." Plaintiff cites letters and emails from Defendant after the notice of disqualification which state the disqualification was "for failure to respond to a proof of farm use and gross income requirement from farm use audit." (Ptf's Ex 3 at 2.) That language was not in Defendant's Notice of Disqualification. The court will not add language to Defendant's Notice of Disqualification based on subsequent correspondence. Thus, the court will not invalidate the Notice of Disqualification based on the timing of Defendant's request for information, rather the court will analyze whether Defendant properly disqualified the subject property for the reasons stated in the notice—that the property is "no longer in farm use."

      2.      *Procedure under ORS 308A.116 and OAR 150-308-1110*

ORS 308A.116(1)(c) provides that non-EFU is subject to disqualification from special assessment "upon the discovery that the land is no longer in farm use for failure to meet the income requirements under ORS 308A.071 or is no longer in farm use." The disqualification is effective as of January 1 if the notice of disqualification is mailed by the county prior to August 15. ORS 308A.116(7)(a), (b).

OAR 150-308-1110 provides:

> (1)(a) Before non-EFU land is disqualified from farm use assessment due to discovery by the assessor that the land is no longer being devoted to a farm use, the assessor must;
> (A) Make a reasonable effort to contact the owner, owner's agent or person using the land;
> (B) Make a site inspection of the property; and
> (C) Request the recent history of the property's use.
> (b) The assessor must make a record of the inspection that includes when the inspection was made, who made the inspection, copy of contact letter(s) or record of other means of contact, information from the person contacted, and notations of

the conditions found. Notations about the conditions found may include the farm uses being made of the property, areas having no apparent farm use, vegetation on the property and its condition, whether the property is fenced and the fence's condition, and other conditions of the property that indicate a farm use or lack of farm use. The record of inspection must be retained in the assessor's office for at least three years.

(c) If the inspection indicates a farm activity being conducted which may not provide sufficient income to satisfy the income test, the assessor must demand that the landowner complete an income questionnaire.

(2) If property disqualification is effective after June 30, the non-EFU property will remain valued for farm use on the assessment and tax roll until the following July 1.

(a) Disqualification for non-farm use occurs as of the January 1 assessment date and is effective as of June 30 if the disqualification notice is mailed on or before August 14.

(b) If non-EFU property disqualification is effective on or before June 30 for any reason other than for non-farm use, to be valid the notice must be mailed within 30 days after the date that land is disqualified.

Defendant complied with some of the requirements set forth above. It made a reasonable effort to contact the owner by mailing multiple letters. It made an informal site inspection and requested the history and financial information from Plaintiff to make a determination. However, Defendant did not make a written record of a site inspection until September 2, 2016, which is after the date of the original notice of disqualification. The court must determine whether Defendant's inspection without documentation until after the disqualification notice renders the disqualification invalid, as was found in *Smith,* or whether Defendant's actions constitutes substantial compliance as was found in *Boardman Tree Farm v. Morrow County Assessor*, 20 OTR 361 (2011).

In *Smith*, the county disqualified a non-EFU property from special assessment. The court found that the county did not visit the property until after sending the disqualification notice and the county did not make "a reasonable effort to contact the owner or to request information on the recent history of the use of the property * * * [which are] both mandatory steps under governing rules." *Smith*, 17 OTR at 362 (citing OAR 150-308A.116(1)(a)). The court also

stated "[m]ost importantly, the county did not comply with ORS 308A.718(3) in providing *the reason* for disqualification." *Id*. at 363 (emphasis in original)  Thus, the court found the disqualification invalid. *Id*.

In contrast to *Smith* is the court's decision in *Boardman*.  In *Boardman* the court specifically considered whether the county's actions were sufficient to meet the "inspection" requirement of OAR 150-308-1100.  *Boardman*, 20 OTR at 365.  In considering the rule, the court utilized the statutory interpretation scheme of *PGE v. Bureau of Labor Industries*, 317 Or 606, 859 P2d 1143 (1993) as applied in agency rules under *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 881 P2d 119 (1984).  *Boardman*, 20 OTR at 366-67.  The court found the term "inspection" ambiguous and reviewed the rulemaking record for a definition of the term. *Id*. at 368.  The court found that the Department of Revenue "had two purposes in adopting the inspection and record-keeping requirements of [OAR 150–308–1100]: (1) to ensure that a given property is, in fact, no longer entitled to EFU special assessment and (2) to ensure that a disqualification will be upheld should a taxpayer choose to challenge it." *Id*. at 368.  The county's inspection was performed by viewing the property from the road. *Id*. at 370.  The court found that entry onto the property was not necessary to constitute an inspection.  As to the record-keeping element, the court found that the parties "engaged in a collaborative effort to preserve the EFU special assessment [and] [t]hat effort was motivated in large part by [the taxpayer's] own knowledge that, in the absence of a legislative remedy, the subject property would be disqualified." *Id*.  The county kept records of the parties' joint effort to change the law and kept records which included maps and conditions of the subject property. *Id*. at 372.  The court held that the county "substantially complied" with the rules, and thus the disqualification notice procedure was upheld. *Id*. at 373.

Several Magistrate Division cases have considered *Boardman*. In *Exit 282A Development Company, LLC v. Clackamas County Assessor*, TC-MD 120764C, 2013 WL 3948638 (Or Tax M Div July 30, 2013), the county performed an inspection in 2007 and then five years later mailed a letter notifying the property owner of disqualification. *Id*. at *1. The court found that the county's inspection and documentation were insufficient and thus void. *Id*. at *6. In *Earth Science Products Corp., v. Clackamas County Assessor*, TC-MD 160012N, 2016 WL 7177518 (Or Tax M Div, Dec 9, 2016), the county documented several phone calls to the property owners and left messages, which were not returned. The county then performed several inspections of the property from outside the fence and left several notices, but did not keep a specific written record of the inspections. The county did have notes in its database about when the inspection was performed. The court found that the county's call to the property owner was sufficient to establish a reasonable effort to contact the property owner. *Id*. at *4. The court also found that a site inspection from the road was sufficient, citing *Boardman*. *Id*. Finally, the court found that the county's note in its log showing the date of inspection was "the bare minimum necessary to satisfy the rule." *Id*. at *6.

In the instant case, Defendant asserts it did a site inspection in March or April 2016, but made no record of the event and no log notes were presented as evidence. If *Earth Science*, sets the lowest boundary of sufficiency of record keeping for a site inspection, then the actions of Defendant in this case falls short of the minimum record keeping requirements. Further, actions by Defendant after the disqualification notice; inspecting the property and documenting its inspection, continuing to seek information from Plaintiff about farm use and income for the property were done too late to disqualify the property for the 2016-17 tax year. OAR 150-308-1110(2).

### III.  CONCLUSION

After careful consideration of the facts in this case, the court finds that Defendant failed to comply with the requirements of OAR 150-308-1110 prior to disqualifying the subject property from non-EFU special assessment.  Defendant's disqualification of the subject property from non-EFU special assessment for the 2016-17 tax year is therefore invalid.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.

Dated this ___ day of January, 2018.


_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by* <u>*mailing*</u> *to: 1163 State Street, Salem, OR 97301-2563; or by* <u>*hand delivery*</u> *to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within* <u>*60*</u> *days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on January 23, 2018.*